8 P.(2d) 1064

EL PASO & R. I. RY. CO. et al. v. DISTRICT COURT OF FIFTH JUDICIAL DISTRICT WITHIN AND FOR CHAVES COUNTY et al.

No. 3662.

Supreme Court of New Mexico.

Nov. 30, 1931.

Rehearing Denied March 22, 1932.

E. R. Wright, of Santa Fé, and H. H. McElroy, of San Francisco, Cal., for petitioners.

L. O. Fullen, of Roswell, and W. A. Dunn, of Walnut Park, Cal., for respondents.

WATSON, J.

This is an original proceeding in prohibition. Our alternative writ has stayed further proceedings in a certain cause pending in the district court of Chaves county. The matter is now before us upon demurrer to the petition.

The suit thus interrupted was commenced by Southeastern New Mexico Water Protective Association, alleged to be, for purposes of the suit, representative of all persons owning water rights by appropriation from the Roswell artesian basin, situated in Chaves and Eddy counties; the city of Roswell, a municipal corporation, deriving its water

supply from said source; and James P. White, an individual appropriator of such artesian water. These plaintiffs sued for themselves and for others similarly situated, including other municipal corporations.

The defendants named were El Paso & Rock Island Railway Company, owner, and Southern Pacific Company, operator, of a line of railroad from El Paso, Tex., to Pastura, N. M.

The complaint sets up facts showing the existence of the Roswell· artesian basin, its extent and sources of supply, the appropriation of water therefrom by the two plaintiffs last named, and others similarly situated, and by the constituent members of the protective association, and that, by reason of drafts already made upon said basin and the sources of its supply, the hydrostatic pressure had been weakened and the water level lowered to the damage of those enjoying rights therein. It proceeds then to allege that in the year 1907 the El Paso & Rock Island Company applied for, and obtained from the territorial engineer, permission to change the point of diversion of five cubic feet of water from the Bonito river, which water rights claimed by the railroad company had been acquired from former appropriators from said river who had used said water for irrigation; that such new use of the water granted by the state engineer involved carrying it out of the Bonito water shed, over a divide, for use as engine water in the operation of trains, as domestic water for the use of local employees of the road, and that it had since been used also as an article of merchandise furnished to indi-viduals and municipalities; that, up to the time of this diversion, and while the waters were still being employed for irrigation in the Bonito watershed, they contributed largely to the recharge of the artesian basin, since all thereof not absorbed by plants or lost by evaporation percolated through the soil, some returning to the stream bed, and some percolating in a general southeasterly direction toward the artesian basin; that such water as returned to the stream bed was again used for irrigation lower down and the process repeated; and, as we understand, that these southeasterly percolations were gathered in the Rio Hondo and its tributary streams, and became an important source of recharge of the basin. A large part of the use to which the railway company has devoted the water since 1907 is attacked as unjustified by the permit and as subversive of the superior rights of the plaintiffs. It is alleged that in 1927 the railway company, on application to the state engineer, obtained a permit to discontinue its then direct diversion of the water and to divert the same thereafter by means of a reservoir to be constructed by a dam in the river. It sets up certain procedural defects, wherefore it is asserted that the state engineer lacked jurisdiction to grant the permit, alleges that the artesian reservoir is recharged principally and supplied with hydrostatic pressure by storm waters that reach the Rio Hondo originating in large part in the drainage area of the Rio Bonito, and that such dam, by stopping storm waters and snow run-off, would greatly damage the plaintiffs. The prayer is for an injunction against

diversion by the defendants from the Bonito under their 1907 permit, or at all, that, if the court finds the defendants entitled to divert any waters from the stream, the exact amount thereof be declared and the diversion of all excessive amounts be enjoined, and that, pending the further order of the court, defendants be enjoined from proceeding with the construction of the dam and reservoir.

Defendants, petitioners here, pleaded in abatement the pendency of another suit. That suit had been previously commenced in the district court of Lincoln county by the present petitioners, setting up their water rights, alleging their validity, and praying for a general adjudication of all water rights in the Bonito stream system. It is alleged in the plea that petitioners had made diligent inquiry to ascertain the names of all persons claiming rights in said stream system, and that, so far as ascertained, they had been included as defendants, together with all unknown claimants, that a large number of defendants had been served, had appeared and pleaded, and that plaintiffs were proceeding to complete service on all defendants named and unknown, and that a hydrographic survey of the stream system had already been ordered by the court for the purposes of such adjudication.

The plea in abatement was answered, and, upon findings made by the court, overruled. Here the alternative writ interrupted the proceedings.

It will be convenient hereinafter to refer to the Lincoln county suit as the adjudication suit and to the Chaves county suit as the injunction suit.

On the petition and demurrer, the question is whether the district court of Lincoln county had obtained a jurisdiction which excludes that of the district court of Chaves county. Respondents deny it, both as to the subject-matter and as to the parties. The question of jurisdiction of the subject-matter is fundamental, and the decision of it will have a bearing on the question of jurisdiction of the parties. We therefore vary the order of discussion adopted by counsel for respondents.

As frequent reference will be necessary to the adjudication provisions of our Water Code (1929 Comp., §§ 151-101 to 151-179), we insert them here:

"151-112. *Id.—Apportionment of Waters.* The state engineer shall have the supervision of the apportionment of water in this state according to the licenses issued by him and his predecessors and the adjudications of the courts. (L. '07, Ch. 49, § 12; Code '15, § 5665.)"

"151-118. *Survey of Stream—Systems.* The state engineer shall make hydrographic surveys and investigations of each stream system and source of water supply in the state, beginning with those most used for irrigation, and obtaining and recording all available data for the determination, development and adjudication, of water supply of the state; including the location and survey of suitable sites for dams and reservoirs and the determination of the approximate water supply, capacity and cost of each. He shall

be authorized to cooperate with the agencies of the United States engaged in similar surveys and investigations, and in the construction, of works for the development and use of the water supply of the state, expending for such purposes any money available for the work of his office, and may accept and use in connection with the operations of his department the results of the agencies of the United States. (L. '07, Ch. 49, § 19; Code '15, § 5671.)"

"151-120. *Water Rights—Suit to Adjudicate.* Upon the completion of the hydrographic survey of any stream system, the state engineer shall deliver a copy of so much thereof as may be necessary for the determination of all rights to the use of the waters of such system, together with all other data in his possession necessary for such determination, to the attorney general of the state who shall, at the request of the state engineer, enter suit on behalf of the state for the determination of all rights to the use of such water, in order that the amount of unappropriated water subject to disposition by the state under the terms of this chapter may become known, and shall diligently prosecute the same to a final adjudication: * * * Provided, however, that the attorney general shall intervene in any suit for the adjudication of rights to the use of water, on behalf of the state, if notified by the state engineer that in his opinion the public interest requires such action. (L. '07, Ch. 49, § 20; Code '15, § 5673.)"

"151-122. *Adjudication of Water Rights— Procedure—Jurisdiction—Survey.* In any suit for the determination of a right to use the waters of any stream system, all those whose claim to the use of such waters are of record and all other claimants, so far as they can be ascertained, with reasonable diligence, shall be made parties. When any such suit has been filed the court shall, by its order duly entered, direct the state engineer to make or furnish a complete hydrographic survey of such stream system as hereinbefore provided in this article, in order to obtain all data necessary to the determination of the rights involved. The costs of such suit shall include the fees of witnesses, the taking of depositions and the fees of the officers for serving process and together with the costs (and the expenses of the hydrographic survey or surveys) on behalf of the state, shall be charged against each of the private parties thereto in proportion to the amount of water right allotted. [The costs and expenses of the hydrographic survey or surveys on behalf of the state shall be a lien upon the lands and water rights of the parties to such adjudication suits in proportion to the amount of water right allotted to each of the parties to such adjudication suit, with interest thereon at the rate of six per cent. per annum until the same shall be paid as hereinafter in section 5 (151-124) of this act, provided.] The court in which any suit involving the adjudication of water rights may be properly brought, shall have exclusive jurisdiction to hear and determine all questions necessary for the adjudication of all water rights within the stream system involved; and may submit any question of fact arising

therein to a jury or to one or more referees, at its discretion; and the attorney general may bring suit as provided in section 5673 (151-120) in any court having jurisdiction over any part of the stream system, which shall likewise have exclusive jurisdiction for such purposes, *and all unknown persons who may claim any interest or right to the use of the waters of any such system, and the unknown heirs of any deceased person who made claim of any right or interest to the waters of such stream system in his life time, may be made parties in such suit by their names as near as the same can be ascertained, such unknown heirs by the style of unknown heirs of such deceased person and said unknown persons by the name and style of unknown claimants of interest to water in such stream system, and service of process on, and notice of such suit, against such parties may be made as in other cases by publication.* (L. '19, Ch. 131, § 3, Amending L. '17, Ch. 31, § 1; Code '15, § 5674.)"

"151-128. *Adjudication of Water Rights—Decree.* Upon the adjudication of the rights to the use of the waters of a stream system, a certified copy of the decree shall be prepared and filed in the office of the state engineer by the clerk of the court, at the cost of the parties. Such decree shall in every case declare, as to the water right adjudged to each party, the priority, amount, purpose, periods and place of use, and as to water used for irrigation, except as otherwise provided in this article, the specific tracts of land to which it shall be appurtenant, together with such other conditions as may be neces-

sary to define the right and its priority. (L. '07, Ch. 49, § 23; Code '15, § 5677)."

For more convenient reference we have italicized that portion of section 151-122 added by amendment in 1917, and have inclosed in brackets that portion of the section imported by amendment in 1919.

■ From what has been said it is apparent that the injunction suit involves the relative rights of appropriators from an artesian basin and of appropriators from a surface stream, the waters of which may, if allowed to flow in their natural course or allowed to remain in the watershed, constitute a source of supply for the basin.

This, respondents say, is no part of the subject-matter of the general adjudication suit contemplated by our statute. Such a suit, they contend, involves merely the relative rights of "the direct appropriators from the stream." Except over this subject-matter, they contend, there has been no enlargement of the general equity powers of the court in which a general adjudication suit may have been instituted and no abridgement of the general equity powers of courts of coordinate jurisdiction. They contend that, not being direct appropriators from the stream, they have the same remedies as if no general adjudication scheme had been adopted.

The language of the sections quoted does not so limit the rights to be adjudicated. Section 151-120 employs the phrase, "the determination of all rights to the use of the waters of such system." Section 151-122 employs the phrase "in any suit for the deter-

mination of a right to use the waters of any stream system"; also the phrase "all water rights within the stream system involved," and, again, "all unknown persons who may claim any interest or right." Only by construction can we hold with respondents that the statute contemplates adjudication of some rights and not of others.

Moreover, so to hold would greatly limit the beneficial purposes of the statute, strictly construe a highly remedial act, and weaken the efficiency of the system of state control of such waters devised by the Legislature in the performance of its function of declaring public policy.

A comprehensive adjudication of water rights is highly important in those states which recognize the principles of prior appropriation and of forfeiture for nonuse. While water rights rested in parole, they had no certainty and little value. Disputes and feuds disturbed the public peace. They filled the courts with cases, civil and criminal. Dangerous and wasteful methods were employed. Development was retarded. A system of state control was needed. Adjudication is essential to the system adopted. The state engineer must apportion waters according to the licenses issued and to the adjudications. Section 151-112, supra. Waters cannot be apportioned according to conflicting decrees or decrees covering less than all claims. Some court must have exclusive jurisdiction to render an all-embracing judgment. It seems unnecessary to enlarge upon this. Others have well stated it. 3 Kinney

on Irrigation and Water Rights (2d Ed.) § 1568; Weiland v. Reorganized Catlin Consol. Canal Co., 61 Colo. 125, 156 P. 596; Louden Canal Co. v. Handy Ditch Co., 22 Colo. 102, 43 P. 535; Hazard v. Reservoir Co., 87 Colo. 364, 287 P. 854; Owens v. Snider et al., 52 Okl. 772, 153 P. 833; Pacific Live Stock Co. v. Lewis, 241 U. S. 440, 36 S. Ct. 637, 60 L. Ed. 1084; Snow v. Abalos, 18 N. M. 681, 140 P. 1044; Pueblo of Isleta v. Tondre, (dissenting opinion) 18 N. M. 388, 137 P. 86.

The present case well illustrates the unfortunate results which might follow a divided jurisdiction. The water right asserted by petitioners is now at issue in two courts. To have it upheld in the adjudication suit would be useless if it can be invalidated in the injunction suit. Defendants in the adjudication suit may have rights decreed to them. The state may intervene and have an adjudication that there are unappropriated waters in the system. These intended benefits of general adjudication are illusory if the results are open elsewhere to attack.

Thus contending for a construction contrary to the language employed and to the broad policy of the statute, respondents rely on other provisions of the act. They point to section 151-101, which, in declaring what are public waters, mentions only "natural waters flowing in streams and water courses." They point to numerous other sections of the act, as showing that it is only such waters the appropriation and use of which are placed under the jurisdiction of the state engineer. They contend that these provisions limit the

application of the whole Code, and that the adjudication features of it are no broader than its regulatory and administrative features.

This court has always recognized that the jurisdiction of the state engineer to control and administer appropriation and use is no broader than as expressed in or necessarily to be inferred from the statute. In Vanderwork v. Hewes, 15 N. M. 439, 110 P. 567, it was held not to include waters seeping from an unknown source. In Pueblo of Isleta v. Tondre, 18 N. M. 388, 137 P. 86, it was held not to include change of point of diversion by a community acequia. It was laid down, generally, that it does not embrace prior existing water rights. In Yeo v. Tweedy, 34 N. M. 611, 286 P. 970, we recognized this limited jurisdiction.

But we have also held, not only that other waters than those mentioned in section 151-101 may be and are public waters, but that rights not brought immediately within the administrative provisions of the Water Code, may still be subject to its adjudication provisions. In Vanderwork v. Hewes, supra, it was suggested (not decided) that, if waters seeping from an unknown source were to be considered public waters, they would be subject to appropriation under the general rules of priority recognized in the western states. In Yeo v. Tweedy, supra, we held that the waters of artesian basins whose boundaries could be ascertained from scientific investigations or surface indications were thus subject to appropriation. In the opinion on re-

hearing in Pueblo of Isleta v. Tondre, supra, this court, though adhering to the view that prior existing water rights were not brought within the general provisions of the water code, did admit the point that they were within its adjudication provisions, and that, once adjudicated, they became subject to the regulatory and administrative provisions of the statute and to the jurisdiction of the state engineer. This was held to be the correct view in Harkey v. Smith, 31 N. M. 521, 247 P. 550.

So it may be stated on authority that the scope of an adjudication may be and is broader in its subject-matter and in its parties than the existing jurisdiction of the estate engineer to license appropriations or to regulate use.

It is true, as pointed out by respondents, that in Colorado, after adjudication, a court of co-ordinate jurisdiction may entertain actions not involving construction or modification of the original decree and simply for the protection of rights awarded by it. Medano Ditch Co. v. Adams, 29 Colo. 317, 68 P. 431; Buckers Irr. Co. v. Farmers' Ditch Co., 31 Colo. 62, 72 P. 49. But those decisions have no bearing upon the present question: Whether, while a general adjudication suit is pending and before decree, another court may entertain jurisdiction and render a perhaps conflicting decree.

The allegations that petitioners have abandoned their rights or a portion of them, or that some of the use to which they have subjected the waters has been unlawful or wasteful, do not bring this case within those

cited. Such issues are proper to be raised in the adjudication suit, where petitioners have submitted the validity and extent of their right, and where all parties contesting or questioning it may be heard and may have their own rights established.

It is true that Colorado adjudications are not so sweeping as ours, and that much more is left to the ordinary jurisdiction of equity. The adjudication determines priorities of ditches only. It is confined to the limits of a water district, which does not necessarily embrace a whole stream system. Priorities among consumers from the same ditch, and among appropriators in different districts from the same stream system, must be settled elsewhere. Sterling Irrigation Co. v. Downer, 19 Colo. 595, 36 P. 787; Fort Lyon Canal Co. v. Arkansas Valley S. B. & I. L. Co., 39 Colo. 332, 90 P. 1023; Farmers' Ind. Ditch Co. v. Agricultural Ditch Co., 22 Colo. 523, 45 P. 444, 55 Am. St. Rep. 149.

Colorado was the leader in statutory state control and adjudication, with twenty-five years of experience before we undertook it. Undoubtedly its statutes and precedents furnished a background for our own legislation. Undoubtedly our adjudication was intended to be more comprehensive. Here stream systems as a whole are to be surveyed. Section 151-118, supra. All rights in the stream system are to be adjudicated. Sections 151-120, 151-122, supra. All claimants are to be parties. Section 151-122, supra. The owners of water rights, not the owners of ditches,

are the parties. Snow v. Abalos, supra. In the light of Colorado's experience, we undertook a more thorough job. With North and South Dakota and Oklahoma, we are said to have based our statutes on the draft of Mr. Bean of the Reclamation Service. 2 Weil on Water Rights in the Western States (3d Ed.) p. 1480. Our scheme seems more logical. Whether it is so ambitious as to be impracticable remains to be determined.

With this preface we come to the suggestion of respondents that to consider appropriators from an artesian basin within the watershed as parties whose rights and priorities are to be determined would so complicate the situation that adjudication would become impossible.

It would, no doubt, add greatly to the number of parties. The statute, nevertheless, contemplates the presence of all claimants, no matter how numerous. In Snow v. Abalos, supra, there were 7,000 defendants.

We see no reason to doubt that "the priority, amount, purpose, periods and place of use, and as to water used for irrigation, except as otherwise provided in this article, the specific tracts of land to which it shall be appurtenant, together with such other conditions as may be necessary to define the right and its priority," as required by section 151-128, supra, may be as readily determined and decreed as among appropriators by means of wells, as among those through ditches.

The great difficulty arises when we consider the relative rights and priorities of the

stream appropriator as opposed to those of the artesian basin appropriator. That task may prove too great. This is not the time to decide whether there is or can be, always or ever, a legally enforceable claim or right in favor of a member of one class as against a member of the other, or in favor of or against one or the other class as a whole. We do not now consider whether the complaint in the injunction suit states grounds for relief. In this proceeding we must assume that it does. If it does, it must be because of rights of the artesian basin appropriators in the Bonito stream system entitling them to question asserted rights of stream appropriators therein. Such claims we think must be heard and decided in the adjudication suit. Such claims asserted by the same parties as stream appropriators, would clearly fall within the exclusive jurisdiction of the court engaged in the general adjudication. The fact that they are asserted by artesian basin appropriators cannot vary the case. If any part of the jurisdiction of the adjudicating court is to be taken away and restored to co-ordinate courts, the Legislature must do it.

Respondents point to Laws 1927, c. 182, as legislative construction of the original Water Code. It is argued that the later act (though unconstitutional as held in Yeo v. Tweedy, supra) was an attempt to control and regulate the relative rights of appropriators from artesian basins as a class by themselves; thus indicating a belief that the original Code did not control. Laws 1931, c. 131, might now be cited to the same point. The Legislature did no doubt consider, as this court had previously indicated, that statutes, in addition to the Water Code, would be necessary to subject artesian water appropriators to the jurisdiction of the state engineer. It did indicate, as is probably true, that the same regulations cannot well be made applicable to both classes of appropriators. But the acts referred to make no reference to statutory adjudications, do not modify their provisions as to subject-matter or parties, and may as well be urged as proof that the Legislature considered the existing law to be sufficient in that respect.

 We pass now to the second of the main questions here raised: Whether the Lincoln county court had obtained a jurisdiction of the parties excluding that of the Chaves county court. If the plaintiffs in the injunction suit, or those they claim the right to represent, are designated in the adjudication suit, it is as "unknown persons who may claim any interest or right to the use of the waters of any such system." Section 151-122, supra.

Here again the parties differ as to the construction of the statute. Respondents take the position that unknown claimants may be joined as defendants only in that class of adjudication suits brought by the Attorney General as provided in section 151-120. Section 151-122 provides that such unknown claimants may be joined "in such suit." This immediately follows a reference to a suit to be brought by the Attorney General, as pro-

vided in section 151-120. Respondents contend that the language is so plain and unambiguous that it requires no construction, and that to hold that unknown claimants may be made defendants in adjudication suits instituted by private parties would amount to judicial legislation. They attempt to gain some aid from the fact that this provision was brought in by amendment in 1917. They also contend that the subject-matter and purpose of a suit instituted by the Attorney General under section 151-120 are so different from those of the suit instituted by private parties that the distinction they urge is logical, reasonable, and was intended.

We cannot agree that the provisions for joining unknown claimants are plain and unambiguous. We cannot doubt that sections 151-120 and 151-122 must be read and construed together. A casual reading of these two sections will raise a doubt as to the antecedent of the term "such suit," as used in the 1917 amendment. It may be the suit which the Attorney General may bring. It may be "any suit for the determination of a right to use the waters of any stream system."

From the two sections it is derived that suits may be instituted by the state or by one or more claimants. It is section 151-120 which affirmatively and specifically authorizes suit by the state. It was quite unnecessary to repeat the authorization in section 151-122. There is no specific and affirmative authorization of a suit to be instituted by private parties, but such is the necessary inference from the provisions of the two sections. Section 151-122 purports at the outset to deal with "any suit for the determination of a right to use the waters of any stream system." Except for the unnecessary reference to suits to be instituted by the Attorney General, there would be no reason to question that all of the provisions of that section are applicable to all adjudication suits.

Undoubtedly it would have been better and clearer if the amendment of 1917 had been inserted higher up in the section, rather than tacked on to the end. On the other hand, if the Legislature had intended it to be applicable only in case of state suits, it would have been better to have amended section 151-120, dealing principally with that class and only incidentally with the other.

As we see it, there is no great practical difference whether a suit has been instituted by the state or by private parties, and no reason for applying the provision as to unknown claimants in one case and not in the other. It is contemplated that the state will be represented, either as a plaintiff or as an intervener, whenever in the judgment of the state engineer there are unappropriated waters to be protected. The decree is to be no different in form or substance in one case than in the other. The findings and decree in either class of case will enable the state engineer to determine whether there are unappropriated waters from which he may grant further permits.

The amendment of 1917 indicates a legislative intent to further the purpose to obtain a complete adjudication of all rights. If it is important that unknown claimants be made parties in a suit instituted by the state, it is equally important that unknown claimants be made parties in a suit in which the state may intervene. So far as the state's peculiar interest in unappropriated waters is concerned, it seems to be contemplated that the same results shall be achieved, whether the state is plaintiff or whether it is an intervener.

 Finally, respondents contend that, even if the subject-matter of the injunction suit is cognizable in the adjudication suit, and even if unknown claimants may be impleaded in a suit instituted by private parties, still the Lincoln county court had not acquired jurisdiction over the plaintiffs in the injunction suit when they resorted for their relief to the Chaves county court.

They first point out that publication as process had not been commenced. Assuming that, on occasion, priority of service may be determinative of priority of jurisdiction, we do not think the matter of service is of importance here. This is not an ordinary case of conflict of jurisdiction as between two co-ordinate courts, as might be true if we were considering two suits each seeking a general adjudication. It is a conflict between a court given exclusive jurisdiction and one which is not. The adjudication suit was no doubt "properly brought" in Lincoln county. From that fact results its "exclusive jurisdiction to hear and determine all questions necessary for the adjudication of all water rights within the stream system involved." Recalling the strong reasons for clothing one court with exclusive jurisdiction, it must be held that such jurisdiction attaches when the complaint is filed. Otherwise, a defendant, whether named or unknown, before service, could set up a rival adjudication suit in another court; codefendants who had been served and had appeared (and there are such in this case) would find their rights involved and themselves answerable in two courts; the state itself might be called upon to intervene in two suits; the "complete hydrographic survey" which the first court may order, "when any such suit has been filed," and which the Lincoln county court has ordered, might be matched by another ordered by the second court.

Respondents contend also that, in July, 1930, petitioners were advised of the claim that "the people living in the Roswell artesian basin asserted rights in the Bonito stream system, to the extent at least of having the flow of the stream continue in its natural water shed, and that the diversion being made and threatened by the petitioners, operated to their injury." So, they say, the owners of rights by appropriation from the artesian basin could not be considered unknown claimants, citing Ex parte Priest, 16 N. M. 692, 120 P. 894, affirmed 232 U. S. 604, 34 S. Ct. 443, 58 L. Ed. 751.

Petitioners insist that the alleged notice is of no importance, since the adjudication

suit had already been instituted. They also contend that the point is unavailable here, since the demurrer admits the fact alleged in the petition that they had diligently investigated and had impleaded by name all claimants of rights so far as they could be ascertained.

Be that as it may, what we have already said we think determinative of this question. Under our statute, artesian appropriators, even if not impleaded, cannot ignore the exclusive jurisdiction of the Lincoln county court. So long at least as that court is open to the assertion of their claims, they must resort there. The provisions of the statute and the reasons behind them forbid entertaining the idea that the exclusive nature of the jurisdiction is to be defeated by failure to serve, or even to implead, all parties. This is not to suggest that one not impleaded or served will be bound by the decree; merely that he cannot, at least during the pendency of the adjudication suit, establish rights or obtain relief assertable or obtainable therein.

We conclude, therefore, that the alternative writ was issued on sufficient grounds and should be made absolute.

It is so ordered.

BICKLEY, C. J., and SADLER and PARKER, JJ., concur.

HUDSPETH, J., being disqualified, did not participate.