379 P.2d 73

**CITY OF ALBUQUERQUE, New Mexico, a municipal corporation, Applicant-Appellee,**

v.

**S. E. REYNOLDS, State Engineer of New Mexico, Respondent-Appellant.**

No. 7013.

Supreme Court of New Mexico.

Dec. 14, 1962.

Rehearing Denied March 15, 1963.

Earl S. Hartley, Atty. Gen., Santa Fe, Charles D. Harris, Special Asst. Atty. Gen., Roswell, for appellant.

Frank L. Horan, City Atty., Albert T. Ussery, Peter Gallagher, Special Counsel, Albuquerque, for appellee.

GEO. L. REESE, Jr., District Judge.

The city of Albuquerque filed with the state engineer four separate applications for permits to appropriate underground waters from the Rio Grande Underground Water Basin. Under each application it was proposed that a well be drilled to a depth of 1200 feet at a described location on the mesa, some six or seven miles east of the Rio Grande River within the exterior boundaries of the basin, and that 1500 acre feet of water per annum be pumped and used for municipal water supply. Each application referred to and incorporated by reference a separate letter of transmittal in which the city stated its claim that, as the successor to the Pueblo de Alburquerque y San Francisco Xavier, founded not later than 1706, it had the absolute right to the use of all waters, both ground and surface within its limits, for the use and benefit of its inhabitants and that this claim was not to be considered as waived or abandoned by reason of the filing and prosecution of the applications.

After due notice by publication, a hearing was held by the state engineer and substan-

tial and adequate testimony and evidence was received to show that the underground waters sought to be appropriated constitute a part of the base flow of the Rio Grande River; that all of the waters flowing in said river have been fully appropriated; and that the granting of the applications would impair the existing rights of the prior appropriators of river water. No evidence was offered at the hearing in support of the claim of the city to a pueblo water right.

After the hearing and under date November 4, 1957, the state engineer issued his findings and order in which he found that the granting of the applications would impair existing rights to the use of the waters of the Rio Grande and that the city had refused to take the steps required by him to offset the adverse effect upon the rights of such users. The applications were accordingly denied.

The state engineer, in his order, referred to an attached memorandum decision "discussing in greater detail the findings herein made."

From the decision of the state engineer, embraced in the above mentioned findings and order and memorandum decision, the city duly appealed to the district court of Bernalillo County where the matter was heard and decided by that court. No new or additional evidence was offered or taken by the district court on the questions as to whether there was unappropriated water in the basin and its relationship to the Rio Grande, or whether the granting of the applications would impair the existing rights of Rio Grande River appropriators; but, over the objection of the state engineer, the court did receive evidence relating to the city's claimed pueblo water right and on November 18, 1960, filed findings of fact and conclusions of law covering this claim and also covering the question of prior appropriations, whether there was unappropriated water and impairment to existing rights. Based upon these findings and conclusions the district court on December 8, 1960, entered its judgment granting to the city the absolute right to appropriate and apply to beneficial use such underground waters of the Rio Grande Underground Water Basin as it may need from the four wells in question, without complying with the rules and regulations of the state engineer requiring the retirement of existing water rights as a condition to the appropriation of underground waters through the said four wells.

The state engineer, being aggrieved by the judgment entered by the district court, has timely appealed therefrom to this court.

The district court made extensive findings of fact and conclusions of law relating to the city's claimed pueblo water right, from which we quote conclusions of law numbers 4 and 11:

"4. That the State Engineer has no jurisdiction to impose upon the City of

Albuquerque any requirement of retiring surface water rights as a condition precedent to the diversion and use of underground waters forming the subject of the four applications involved in this case, because the said City, as successor. of the pueblo, San Felipe de Alburquerque, has an absolute and unconditional right to divert and use so much of the surface and underground waters of the Rio Grande as is necessary for its use and that of its inhabitants.

"11. That the State Engineer has no power to impair or disturb the ancient water rights of the City of Albuquerque, New Mexico, which were vested and existed prior to 1907."

The state engineer contends: That the powers and duties imposed upon him are administrative in character and that he therefore had no jurisdiction to adjudicate the claim of the city that it is the owner of a pueblo water right; and that the district court, on appeal to it under the provisions of § 75–6–1, N.M.S.A., 1953 Comp., has no greater jurisdiction than the state engineer and hence no power or jurisdiction to adjudicate such claim of the city in the proceedings.

The city pays slight attention to this contention of the state engineer, contenting itself with the assertion that the rules relating to judicial review of administrative decisions are not applicable because of the duty of the state engineer to recognize and protect vested rights; and it is argued that it was proper for the city to present, and the state engineer and the district court to receive, evidence of its prior existing appropriative rights because no other legal avenue is open by which these rights can be considered and adjudicated.

Proper disposition of this appeal does not require that we attempt to determine and delineate the exact character or extent of the powers which are vested in the state engineer, nor the exact character and extent of the trial "de novo" which is had in the district court on an appeal from an order or decision of the state engineer under the provisions of § 75–6–1, supra. Here we are called on to decide the narrow question as to whether, in a proceeding such as this, it is within the jurisdiction of the state engineer or the district court to attempt to determine and adjudicate a claim to a water right which, if it exists, is of a prior and paramount nature, beyond any regulatory power of the state engineer.

The mere statement of the question makes the answer apparent. It is obvious that if the city owns the absolute and unconditional right to divert and use the water for which it made applications to appropriate, that there is nothing before the state engineer requiring any action on his part. The applications are for the purpose of securing

a permit to appropriate the public unappropriated water and if the city already owns the water, or the prior, paramount absolute and unconditional right to its use, the water is no longer public water and the law does not require that the city obtain a permit to appropriate water which it already owns and which is not public unappropriated water.

It is apparent that the city has attempted by this proceeding to secure an adjudication as to the validity of its claimed pueblo water right without notice of any kind to other appropriators of Rio Grande Stream and Basin Waters and none of these appropriators are parties hereto. All admit that the waters of the Rio Grande Stream are now fully appropriated and, from the city's brief, it can be asserted that these appropriations have been made without any regard for the pueblo water right which the city has asserted in this case.

As to the argument of the city that no other legal avenue is open to it by which this claimed right can be adjudicated, we are wholly unresponsive. We will not in this opinion attempt to outline the way, but one will no doubt be found should the city continue its claim of prior and paramount right to the use of all of the water of the Rio Grande Stream and Underground Basin to the extent necessary to supply its inhabitants.

The applications in question were filed pursuant to § 75–11–1, et seq., N.M.S.A., 1953 Comp. These statutes provide for application by one desiring to appropriate public unappropriated water for beneficial use and, upon the filing of an application, a notice is published by which all interested persons are advised of the amount of water sought to be appropriated, its source, the point of diversion, and the beneficial use to which it is to be put. Any interested person is afforded an opportunity to file a protest to the granting of the application and, if one or more protests are filed, a hearing is held after which the statute, § 75–11–3, supra, as it existed when these applications were filed, provided in pertinent part:

" * * * the state engineer shall, if he finds that there are in such underground * * * reservoir * * * unappropriated waters, or that the proposed appropriation would not impair existing water *rights from such source,* grant the said application and issue a permit to the applicant to appropriate all or a part of the waters applied for subject to the rights of all prior appropriators from said source." (Emphasis added)

It is apparent that under this statute there are only two questions to be determined: (1) Whether there are unappropriated waters; and (2) whether the taking of such

**434**

waters will impair existing water rights from such source.

We need cite no authority in support of the proposition that, under these statutes and under the notice given pursuant thereto, the claim of the city, that it owned an appropriative right of such nature that it did not legally require the very permit for which application was made, was improperly injected into the proceeding. Such a claim is not contemplated by the statutes and for this reason alone could not lawfully have been considered by the state engineer.

As to the injection of this issue on the appeal from the orders of the state engineer to the district court, we note first that there is no new or additional notice provided in the appeal proceedings. Section 75–6–1, supra. Thus the only participant in the proceedings other than the city, was the state engineer. We have held that, on such appeals, the state engineer is a proper, if not an indispensable, party because under the statute he is given the general supervision over the measurement, appropriation and use of public waters and any decisions entered by the district court are binding upon him. Plummer v. Johnson, 61 N.M. 423, 301 P.2d 529. But this is not to say that, on an appeal from an order of the state engineer denying an application to appropriate public water, the state engineer is the representative of the public to the extent that he may, in such proceeding, bind the public to an adjudication as between himself and one asserting a claim to ownership of public water which is wholly outside the issues presented by the application which forms the basis of the proceeding. It is fundamental to say that due process requires notice and hearing so that those who are to be bound or affected by a judgment may have their day in court. Compare State ex rel. Reynolds v. W. S. Ranch Company, 69 N.M. 169, 364 P.2d 1036. The district court, in this proceeding, clearly had no jurisdiction to consider and adjudicate the claimed pueblo water right.

We therefore hold that all of the findings of fact and conclusions of law of the district court, relating to the Pueblo of San Felipe de Alburquerque and the claimed pueblo water right, should be stricken as not being within the issues properly before the court, and the judgment of the district court, insofar as it is based upon such findings and conclusions, should be reversed.

We turn now to a consideration of the question as to whether the judgment of the district court is to be upheld insofar as it deals with the facts and law relating to the applications to appropriate water from the Rio Grande Underground Water Basin.

It is an admitted fact that the surface waters of the Rio Grande are fully appropriated. It is also an admitted fact that the underground waters, in the area where the city proposed to drill its wells, contribute

substantially to the flow of the Rio Grande, thus constituting a part of the source of the stream flow. The state engineer and the district court each found that the granting of the applications would impair existing rights to the use of the surface waters of the Rio Grande.

In his memorandum decision, which is referred to and made a part of his findings on which he denied the city's applications, the state engineer made further findings and conclusions as follows:

'* * * The scientific considerations discussed hereinabove show clearly that accretions from the underground reservoir constitute a major source of the fully appropriated surface water supply of the Rio Grande. These considerations also show that over a 75-year period about one-half of the water proposed to be taken would be extracted from surface flows and about one-half would be taken from underground storage. Much of the water in storage in the Rio Grande underground reservoir is unappropriated and may be taken for beneficial use under an application properly formed to insure against the impairment of existing surface water rights.

"Under proper application the appropriator may take advantage of ground water that can be removed from storage without impairment of existing rights, and can take advantage of an accounting of the return flow from his appropriation. The permits applied for could be granted without danger of any impairment of existing surface water rights under the following conditions: 1) That the amount of water pumped be measured. 2) That the amount of return flow be measured. 3) That existing rights to the consumptive use of surface water would be retired to the extent necessary to offset the effects of the appropriation on the Rio Grande.

"The letter of transmittal accompanying the City of Albuquerque's applications RG–960 through RG–963, which is referenced in each of those applications * * * makes it clear that the applicants do not intend that any rights to the use of surface water are to be pledged or retired in connection with those applications; therefore, approval of the applications in their present form would result in the impairment of valid existing rights to the use of the waters of the Rio Grande."

The city does not question the basic facts above outlined which made necessary some character of regulation as a prerequisite for new appropriations from the basin. The city states the ultimate issues to be determined here as follows:

"1. Assuming the interrelationship of underground and surface waters

in the Rio Grande Underground Water Basin, does the State Engineer have the power and authority to interrelate the same as a matter of law so as to require the retirement of surface water rights as a condition precedent to the appropriation of underground water.

"2. Does the State Engineer have the power and authority to deny an application to appropriate underground water where he has (1) found that unappropriated underground water exists for this purpose; (2) not found that the proposed appropriation of underground water would impair existing water rights from such source; (3) found that the only impairment which might develop in the future would be to surface waters; and (4) found that no valid objections to such appropriation had been filed."

The district court made the following conclusion of law which poses the proposed issues above quoted:

"10. That, as a matter of law, the State Engineer has exceeded his lawful jurisdiction and authority by requiring the retirement of usage under existing surface water rights as a condition precedent to the Applicant's appropriation

of underground water, and the rules and regulations of the State Engineer to this effect, as contained in the Memorandum accompanying the Order Declaring the Rio Grande Underground Water Basin of November 29, 1956, and elsewhere, as applied to the City of Albuquerque, are invalid, unconstitutional, void, and in excess of his lawful jurisdiction and authority."

In support of this conclusion of the trial court and of the negative of the issues quoted supra, the city argues, first, that the statutes, from which the state engineer derives his authority to act, do not interrelate and do not authorize the state engineer to interrelate surface and underground waters so as to require the retirement of one as a prerequisite to the appropriation of the other.

All admit that nature has interrelated the Rio Grande stream flow and the underground waters in the Rio Grande Underground Water Basin to the extent that such underground waters contribute substantially to the stream flow.

In the western states, where the public waters are held subject to use by prior appropriators, it has always been the law that a prior appropriator from a stream may enjoin one from obstructing or taking waters from an underground source which

would otherwise reach the stream and which are necessary to serve the stream appropriators' prior right. El Paso & R. I. Ry. Co. v. District Court of Fifth Judicial Dist., 36 N.M. 94, 8 P.2d 1064; Carlsbad Irr. Dist. v. Ford, 46 N.M. 335, 128 P.2d 1047; Pecos Valley Artesian Conservancy Dist. v. Peters, 50 N.M. 165, 173 P.2d 490; Chavez v. Gutierrez, 54 N.M. 76, 213 P.2d 597; Templeton v. Pecos Valley Artesian Conservancy Dist., 65 N.M. 59, 332 P.2d 465; State ex rel. Reynolds v. W. S. Ranch Company, supra; and City of Colorado Springs v. Bender, (Colo.1961), 366 P.2d 552.

Under the facts in this case, with the Rio Grande stream flow being fully appropriated, it would indeed be anomalous for the legislature to enact laws designed to permit water, which would otherwise reach the stream in substantial quantities, to be withdrawn by pumps and thereby attempt to deprive the prior appropriators of their vested rights. See authorities last cited, supra. We find in the statutes themselves no evidence whatever of any such design on the part of the legislature.

■ The mere fact that the territorial legislature in the water code, Chapter 49, Laws 1907, dealt only with surface waters and therein gave the territorial engineer certain jurisdiction over these waters does not, as argued by the city, imply a legislative intention that subsequent statutes dealing with underground waters are to be looked upon and treated entirely separate and apart as though dealing with two entirely different subjects. The jurisdiction and duties of the state engineer with reference to streams and underground waters are the same. They each relate to public waters subject to use by prior appropriators. There does not exist one body of substantive law relating to appropriation of stream water and another body of law relating to appropriation of underground water. The legislature has provided somewhat different administrative procedure whereby appropriators' rights may be secured from the two sources but the substantive rights, when obtained, are identical. We have so held. Yeo v. Tweedy, 34 N.M. 611, 286 P. 970; Pecos Valley Artesian Conservancy Dist. v. Peters, supra; State ex rel. Reynolds v. Mendenhall, 68 N.M. 467, 362 P.2d 998. In the Pecos Valley Artesian Conservancy District case, supra, we referred to the opinion of Mr. Justice Watson in the case of Yeo v. Tweedy, supra, and said:

"* * * This thought stands out in the opinion and holding of the court, namely, that legislative enactments classifying such waters as public and subject to appropriation are merely declaratory of the state of the law prior to such legislation and that except for any differences compelled by their subterranean character, such wa-

ters are affected with all the incidents of surface waters as to use, appropriation and administration. * * *"

■■ The city next argues in support of its position that the statute, § 75–11–3, supra, as it existed at the time of the filing of its applications and prior to amendment in 1959, by its own terms required the state engineer to approve an application to appropriate underground water where there is unappropriated water in the basin, unless the approval would result in impairment of existing rights to take water directly from the basin, itself.

This statute is quoted supra with emphasis supplied by us to point up the emphasis on certain language which the city relies upon. To state the matter simply, the city argues that the engineer, in acting on an application to appropriate underground water, must protect none other than appropriators taking directly from the underground basin itself—that "existing water rights from such source" means appropriators having existing wells in the basin, as distinguished from and to the exclusion of appropriators from streams fed by waters from the same basin or source. Such a construction of the statute could not constitutionally deprive the prior stream appropriators of their right to protect their vested water rights by appropriate actions in court, but it would lend legislative sanction to a wrongful act on the part of a subsequent appropriator. It would, practically speaking, result in a use of state power to impose an unconscionable burden of time and expense of litigation on prior stream appropriators. We are not forced to such a construction and, in fact, are not called upon to strain the English language to say that the statute directs disapproval of an application to appropriate underground water in all cases where the granting would result in impairment of "existing water rights from such source," including existing rights in streams which substantially derive water from such source. The statute makes no exception as to "existing water rights from such source" and we will make none.

In Templeton v. Pecos Valley Artesian Conservancy Dist., supra, we were not faced with the argument made here as to the meaning in the statute of the phrase "existing water rights from such source," but we did there hold that a prior appropriator of stream water had the right to follow the stream water to its underground source and the right to drill wells and take the underground water necessary to fill his prior stream right, regardless of detriment to other underground water appropriators whose rights were subsequent in time to the stream right. This case, and what we have announced supra, effectively disposes of the broad proposition advanced by the city that the state engineer has no direction or authority from the legislature

to protect prior appropriators of stream water from impairment at the hands of subsequent appropriators of underground water in basins, the waters of which constitute a part of the base flow of a surface stream.

■ Having found legislative authority in the state engineer to deny the city's applications on the ground that their granting would result in impairment of the rights of Rio Grande River appropriators, we next consider the argument that the state engineer exceeded his power and jurisdiction by establishing and promulgating rules and regulations requiring the retirement of surface water rights as a condition to new appropriations of underground water from the Rio Grande Underground Water Basin. We have already referred to the fact that no attack is made here, nor has one been made elsewhere in these proceedings, on the reasonableness of the regulations promulgated by the state engineer. If we assume, as we must, from the findings made by the state engineer and also by the district court that the underground waters in question cannot be taken without impairment to the rights of the river appropriators, even though there are unappropriated underground waters in the basin, then it would seem to follow that some method should be devised, if possible, whereby the available unappropriated water can be put to beneficial use. Be-

cause of the interrelationship between the two waters, as discussed in the findings of the state engineer from which we have extracted quotations supra, it would seem that a method has been devised to serve this purpose. Having the statutory power and duty to prohibit the taking, by denying the applications in toto if necessary to protect existing rights, the state engineer has reasonably exercised his power by imposing suitable conditions so as to permit such taking as will not result in impairment. This power to impose suitable conditions is inherent in the broader power to prohibit and may also be expressly covered by that portion of § 75-11-3, supra, which provides that, under the conditions set out, the state engineer shall grant the said application and issue a permit to the applicant to appropriate "all or a part of the waters applied for." Furthermore, no quarrel is made here with the physical fact stated by the state engineer, that:

"The relationships derived from Darcy's law show that the effects of ground-water withdrawals on a nearby stream arise gradually and that if the well is some distance from the stream many years elapse before the effects of the withdrawal are fully reflected in the stream-flows. The relationships show, however, that ultimately the annual stream-flow is reduced by an amount equal to the annual ground-water appropriation. The relationships also

show that once a ground-water appropriation is made, and continued for a period of time, the effects on surface water flows are not terminated at the time that the ground-water appropriation is terminated but continue, gradually diminishing, for many years after the ground-water appropriation is ended."

The conditions imposed by the state engineer provide for measuring the pumped water and the return flow to the stream, and take into account the accretion to the stream flow which would result therefrom and, in his decision, the state engineer referred to calculations and charts, introduced as exhibits in the hearing before him, showing that under the applications of the city and with a return flow of 40% from the city's works, as at present, the water taken from the basin would, over a 75-year period, be extracted about one-half from underground storage and one-half from surface flows.

We feel constrained to hold that the state engineer adopted the only known plan to avoid impairment to existing rights and that his requirement, that surface rights be retired to the extent necessary to protect prior stream appropriators as a condition of the granting of an application to appropriate from the basin, is within the lawful power and authority of the state engineer.

It is argued by the city that the state engineer, at the time of the filing of the applications, had no jurisdiction over municipalities and, for this reason, no authority to require the retirement of surface rights as a condition to the granting of the city's applications. This is an anomalous argument because—why make an application to one who has no jurisdiction or authority to grant it? However, we will dispose of the contention. The city points to the provisions of § 14–21–52, N.M.S.A., 1953 Comp., enacted by the territorial legislature in 1884, as granting to municipalities the exclusive jurisdiction over the appropriation of surface and underground waters for municipal purposes, and as granting them the right and privilege to appropriate such waters in sufficient quantity to meet their needs. The two paragraphs of this section of the statute pertinent to this contention read:

"They shall have power to construct public wells, cisterns and reservoirs, in the streets and other public and private places within the city or town, or beyond the limits thereof, for the purpose of supplying the same with water; to provide proper pumps and conducting pipes or ditches, to regulate the distribution of water for irrigation and other purposes, and to levy an equitable and just tax upon all consumers of water for the purpose of defraying the expenses of such improvements.

"They shall have the right and privilege of taking water in sufficient quantity for the purpose hereinbefore mentioned, from any stream, gulch or spring in the state: Provided, that if the taking of such water in such quantity shall materially interfere with or impair the vested right of any person or persons, or corporation theretofore acquired, residing upon such creek, gulch, or stream, or doing any milling or manufacturing business thereon, they shall obtain the consent of such person, or persons, or corporation, or acquire the right of domain by condemnation, and make full compensation or satisfaction for all the damages thereby occasioned to such person, or persons, or corporation."

In the light of the proviso above quoted, relating to condemnation and full compensation for prior vested rights, it is apparent that the statute did not even purport to give municipalities any paramount right to appropriate the public waters for municipal purposes. No such claim of paramount right has ever been made in any case reaching this court. Art. XVI, Sec. 2, Constitution of New Mexico, provides:

"The unappropriated water of every natural stream, perennial or torrential, within the state of New Mexico, is hereby declared to belong to the public and to be subject to appropriation for beneficial use, in accordance with the laws of the state. Priority of appropriation shall give the better right."

This provision has been held to be merely declaratory of the law as it existed at the time of the adoption of the constitution, and the same law has been held to have at all times been in effect as to underground waters, although not mentioned in the constitution. Yeo v. Tweedy, supra; State ex rel. Bliss v. Dority, 55 N.M. 12, 225 P.2d 1007.

It seems obvious to us that a power granted by the legislature to municipalities to appropriate public water is, until exercised, subject to such legislative regulations as may thereafter be imposed by the legislature upon the exercise of the power.

It is further argued that municipalities were expressly exempted from the provisions of the underground water regulatory statutes enacted in 1927, Ch. 182, Laws 1927, which provided in § 4, that:

"This Act is not intended to apply to the construction of wells by persons, corporations, or municipalities to obtain waters for domestic or stock watering purposes."

It is said that this section is still in full force and effect because it has never been repealed. In Yeo v. Tweedy, supra, we struck down Ch. 182, Laws 1927, because it offended the constitutional provision pro-

hibiting the extension of an act by reference. There is, therefore, no substance to the argument that a section of the 1927 Act, exempting municipalities from certain provisions of that Act, has never been specifically repealed.

■ Argument is made that the water regulatory acts, respectively by §§ 75–8–1 and 75–11–4, N.M.S.A., 1953 Comp., exempt the statutory right of appropriation previously given to municipalities from the regulations. These sections of the statutes relate to the protection of rights initiated prior to the enactment of the regulatory acts of which they are a part. Without discussing the provisions of these statutes, it is apparent that the argument, figuratively speaking, "falls on its face," when the city in this proceeding is not attempting to protect itself from any claimed usurpation of power by the state engineer, but is applying to the state engineer to grant permits for the appropriation of *unappropriated* waters of the Rio Grande Underground Water Basin.

■ The city argues that the 1931 Act, as it existed in 1957, was not applicable to municipalities because municipalities are not expressly named, and if applicable, the city's applications should be granted because of the provisions relating to permits for household or other domestic use, including the irrigation of not to exceed one-acre of non-commercial trees, lawn or garden. The statute, § 75–11–3, supra, requires an application from "Any person, firm, or corporation" desiring to appropriate water for "irrigation or industrial uses."

We have no difficulty in holding that municipal corporations are embraced in the term "any corporation." The 1927 Act expressly excluded municipal corporations. The failure to make this exclusion in the 1931 Act is significant when a comparison of the two acts shows that the first afforded the working pattern for the second, and the legislature was attempting to remedy the defects in the 1927 Act pointed out in our decision in Yeo v. Tweedy, supra. Furthermore, it is suggestive of the legislature's intent to take note of Ch. 251, Laws 1959, wherein the legislature, for the first time, prescribed the procedure to be followed when the declaration of a basin intervened after a well had been drilled proving existence of underground waters, but before the same had been placed to beneficial use. In § 1 of that Act it is provided:

"The term 'person' when used in this act shall be held to mean and include corporations, cities, towns and villages and other legal entities, as well as individuals."

If municipalities were not covered by the 1931 law, so that they were required to obtain permits in declared basins, then their inclusion in the 1959 law would be meaningless.

■ Now as to the argument that since the state engineer, by the 1931 law is required to grant permits, without restriction, to applicants desiring water for household or other domestic use, including the irrigation of not to exceed one acre of non-commercial trees, lawn or garden, he should grant the city's applications to take water for municipal uses, we first notice the undisputed fact, as noted in the findings, that the city's proposed beneficial use termed "municipal," includes "industrial uses."

The argument that the city, operating a municipal water system, is to be considered the agent of each of its inhabitants, so as to appropriate for the benefit of each, water which he might obtain by drilling his own well, is preposterous. The legislature has not attempted to make municipalities such an agent and we will not do so.

■ Argument is made that the state engineer has no jurisdiction over the fully appropriated waters of the Rio Grande because the rights in this river system have not been adjudicated, and further because such waters are within the boundaries of the Middle Rio Grande Conservancy District; and having no jurisdiction over such waters, the argument continues, he may not lawfully require the retirement of use of such waters as a condition of granting permits to appropriate the basin waters. We will not burden this opinion with any discussion of this alleged "jurisdictional" question since the obvious answer is that the state engineer, by his order in this case, has not attempted to exercise any jurisdiction over Rio Grande Stream Water. He has merely undertaken thereby to perform the duties which devolve upon him under §§ 75–2–1, 75–11–1, and 75–11–3, N.M.S.A., 1953 Comp. The city may, under the statutes heretofore cited, obtain these surface water rights by condemnation or, like other applicants, by bargaining, but since the interrelation exists between these waters, such fact must be accepted.

■ The city makes a rather extensive argument that the appropriations made by it out of the river prior to 1907, and those made in the basin by some 60 wells prior to the declaration of the basin in 1956, cannot be impaired by the state engineer. We are unable to perceive how this argument has any bearing upon the city's applications in this case. The city is not applying to change its points of diversion under existing rights but, as noted several times in this opinion, it is applying to appropriate from the unappropriated waters of the basin.

During the pendency of this matter in the district court, pursuant to interlocutory orders, the wells in question were drilled and the city was permitted to take water therefrom on certain conditions stated in the orders. The judgment of the district court relieved the city of the necessity of complying with the stated conditions.

The judgment of the district court should be reversed and this matter should be remanded to that court with directions to take such further proceedings herein as are consistent with this opinion and as are consistent with the rights of the parties as they may have been affected by the interlocutory orders.

It is so ordered.

MOISE and NOBLE, JJ., concur.