344 P.2d 943

STATE of New Mexico ex rel. S. E. REYNOLDS, State Engineer, and Pecos Valley Artesian Conservancy District, Plaintiffs-Appellees,

v.

Mack SHARP and Beatrice Sharp, Defendants-Appellants.

No. 6566.

Supreme Court of New Mexico.

Oct. 2, 1959.

194

Frazier & Cusack, Roswell, for appellants.

Hilton A. Dickson, Jr., Atty. Gen., Charles D. Harris, J. Lee Cathey, Sp. Asst. Attys. Gen., John F. Russell, Roswell, for appellees.

MOISE, Justice.

This is another in a series of appeals resulting from orders entered adjudging water rights in the Roswell Artesian Basin, and results from adjudication to the appellants of a right to irrigate 120 acres in the NE¼ of Sec. 26, Twp. 13 South, Rge. 25 East, N.M.P.M., instead of 134 acres, or at least 129.4 acres as claimed by them.

This is an action brought under the provisions of §§ 75-4-4 and 75-4-6, N.M.S.A. 1953, to adjudicate the rights to waters in the Roswell Artesian Basin. The appellees filed the action against certain defendants who owned land in one township, and allege in their complaint that "a hydrographic survey is being conducted and prepared by the plaintiffs and when portions of said survey are completed, they will be filed in this court" and then they ask the Court to add additional parties "as their identity becomes known." The appellants here were added as parties by the 13th order joining additional parties defendant, were served with process and thereafter answered in the cause.

At the outset, counsel for appellants suggest the absence of jurisdiction in the lower court, and although not raised in the court below, raise it here under our Supreme Court Rule 20 which permits consideration of jurisdictional questions raised for the first time in the Supreme Court.

■ Appellants' position may be stated briefly as follows: Since §§ 75-4-4 and 75-4-6, N.M.S.A.1953, were a part of the 1907 water code they applied only to stream systems and not to artesian or shallow water pools, and to hold otherwise is judicial legislation. It is sufficient answer to this argument to point out that in the case of El Paso & R. I. Ry. Co. v. District Court of Fifth Judicial District, 36 N.M. 94, 8 P.2d 1064, 1065, decided in 1931, this Court held that the procedure set up in the 1907 statute was "all-embracing, and includes claimed rights of appropriators from artesian basin" within a stream system.

It is next argued that stream systems as a whole are to be surveyed, *all* rights in the stream system adjudicated and all claimants made parties, and that to proceed piecemeal, township by township, as hydrographic surveys are completed, and adding parties as their identity becomes known is such a departure from the statutory procedure as to be jurisdictional, and further that this is a part of the Pecos River stream system which was adjudicated in the case United States v. Hope Community Ditch et al., being cause No. 712 Equity, on the

docket of the United States District Court for the District of New Mexico, and accordingly cannot be again adjudicated in these proceedings.

Section 75-4-4, N.M.S.A.1953, provides in part that "upon the completion of the hydrographic survey of any stream system, the state engineer shall deliver a copy or so much thereof as may be necessary for the determination of all rights to the use of the water of such system * * * to the attorney general of the state who shall * * * enter suit * * * for the determination of all rights to the use of such water * * *," and § 75-4-6, N.M.S.A. 1953, provides in part that "in any suit for the determination of a right to use the waters of any stream system, all those whose claim to the use of such waters are of record and all other claimants, so far as they can be ascertained, with reasonable diligence, shall be made parties. When any such suit has been filed the court shall, * * * direct the state engineer to make or furnish a complete hydrographic survey of such stream system * * * in order to obtain all data necessary to the determination of the rights involved. * * *"

In El Paso & R. I. Ry. Co. v. District Court of Fifth Judicial District, supra, this Court clearly held that all rights in the system, both underground and surface, were within the contemplation of the statute, and from this holding we are not prepared to depart.

In that case it appears that a writ of prohibition was sought in the Supreme Court to prevent the Fifth Judicial District Court from hearing a case brought in that court to enjoin the defendants therein named from diverting any waters to which they had rights from the Rio Bonito watershed as planned by the defendants, because this water allegedly was part of the water which re-charged the Roswell Artesian Basin, in which plaintiffs and those represented by them had valuable water rights which would be damaged if the diversion took place. The defendants had pleaded in abatement the pendency of another suit brought in the District Court of Lincoln County by them seeking a general adjudication of the water rights on the Rio Bonito. Upon the plea in abatement being overruled, the writ of prohibition was sought. The fact that the priorities and rights between users in the Roswell Artesian Basin and in the Rio Bonito stream system were the subject of adjudication in the Lincoln County case, without inclusion of all other surface claimants in the Pecos River stream system or even claimants of underground rights in the Roswell Artesian Basin was not considered to affect the Lincoln County court's jurisdiction, although there is discussion of the effect of including "unknown owners" and "unknown claimants of interests," the court concluding as follows:

196

"Under our statute, artesian appropriators, even if not impleaded, cannot ignore the exclusive jurisdiction of the Lincoln county court. So long at least as that court is open to the assertion of their claims, they must resort there. The provisions of the statute and the reasons behind them forbid entertaining the idea that the exclusive nature of the jurisdiction is to be defeated by failure to serve, or even to implead, all parties. This is not to suggest that one not impleaded or served will be bound by the decree; merely that he cannot, at least during the pendency of the adjudication suit, establish rights or obtain relief assertable or obtainable therein."

That the term "stream system" as used in the statute does not necessarily require the inclusion of every possible right both underground and surface must also have been recognized in that case as the Rio Bonito is a small stream tributary to the larger stream system of the Pecos River. It was never considered or asserted that all claimants in the entire Pecos River system had to be made parties. The court did consider the practical problems incident to the broad interpretation there given to the statute as including underground waters as well as surface, and suggested that whether the resulting task "is so ambitious as to be impracticable remains to be determined."

The same conclusion as that reached in El Paso R. I. Ry. Co. v. District Court of Fifth Judicial District, supra, concerning omitted parties, was reached in the later case of Bounds v. Carner, 53 N.M. 234, 205 P.2d 216, 222, where the court stated that "the fact that all of the persons entitled to the use of water from the Pecos River Stream System were not made parties to the Federal suit does not invalidate the decree. It is binding on all who were parties."

It is true that no decree declaring "the priority, amount, purpose, periods and place of use * * * the specific tracts of land to which it shall be appurtenant, together with such other conditions as may be necessary to define the right and its priority" as required by § 75–4–8, N.M.S.A.1953, can be entered concerning the waters of the Roswell Artesian Basin until hydrographic surveys thereon have been completed and all parties impleaded, at which time it is contemplated a further hearing to determine the relative rights of the parties, one toward the other, will be held. We cannot say that when this is done, and a decree entered pursuant to the provisions of § 75–4–8 quoted above, all of the statutory requirements will not have been met.

This immediately suggests the question of whether the order entered and appealed herein is a final order. Suffice it to say that insofar as it covers the matters in-

cluded therein, namely, the amount, purpose, periods, place of use and specific tract of land to which it was appurtenant, it was final and nothing remained for the final decree except to incorporate the same and fix the priority. See § 21–2–1(5), N.M.S.A. 1953.

From what has been said, it would seem to follow that the step by step procedure employed in this case, which will, before it is completed, encompass the entire Roswell Artesian Basin and all matters required to be decreed by § 75–4–8, N.M.S.A.1953, together with all known parties by name, as well as all "unknown owners" and "claimants" is a substantial compliance with the requirements of the adjudication statutes, and a reasonable and practical way to accomplish the desired purposes. Accordingly, we hold that the lower court is acting within its jurisdiction in proceeding as it is.

■ Having determined that there is no jurisdictional defect in the proceedings, it remains only for us to examine to determine whether or not the court erred in limiting appellant's rights to irrigate to 120 acres instead of some larger amount.

All of the pertinent evidence is documentary, and appellant asserts that the Supreme Court is as well situated to appraise it and resolve conflicts therein as was the trial court, citing Newbold v. Florance, 56 N.M. 284, 243 P.2d 597; Valdez v. Salazar, 45 N.M. 1, 107 P.2d 862.

Briefly reviewing this documentary evidence, we find that on October 18, 1934, one W. H. Woodlief, a predecessor in title of appellants, filed an application to drill a well to irrigate 160 acres in the NE¼ of Sec. 26, Twp. 13 South, Rge. 25 East. On June 30, 1936, the applicant was notified his application was cancelled. Also, on October 18, 1934, Mr. Woodlief filed a declaration under § 75–11–5, N.M.S.A.1953, claiming a right to irrigate from shallow ground water 120 acres in this quarter section. On October 6, 1936, a Mrs. Belle Hurst, also a predecessor in title of the appellants, filed an application to change location of the shallow water well on this quarter section. Proof of completion of works was filed in December, 1937, and thereafter, on January 28, 1939, Mrs. Hurst filed proof of application of water to beneficial use on 120 acres in said quarter section. Thereafter, on February 27, 1939, the State Engineer issued Mrs. Hurst a certificate and license granting a right to appropriate 360 acre feet of water per annum from said well for the purpose of irrigating 120 acres of land in said quarter section.

On April 23, 1953, a change of ownership of the water rights from Mrs. Hurst to one Carl A. Nicholas and Breebia Gean Nicholas for 120 acres was duly filed. On November 10, 1954, another change of ownership from Nicholas to Raymond Carter describing 120 acres of rights was filed.

198

Under date of February 28, 1956, appellant Mack Sharp filed a statement under oath that water rights in said quarter section totalling 115.4 acres had been transferred from Raymond Carter to him. It is on this evidence that the trial court found and concluded that appellants were entitled to irrigate 120 acres and no more in the described quarter section.

The conflicting evidence, also documentary in nature, which appellants assert requires a different result is briefly described as follows: The so-called Dallas survey, being a survey of the property made by an employee of the State Engineer's office in the year 1935, and showing 130 acres under irrigation; an amended declaration of rights filed by appellant Mack Sharp on May 31, 1956, claiming an appropriation of water to irrigate 134 acres; two letters from an employee of the State Engineer's office, dated June 27, 1956, stating first that the water rights covered 117.7 acres, including reservoir, then on January 9, 1958, stating that the State Engineer's office recognized 129.4 acres of water rights, and that the 1952 aerial survey showed 158.7 acres under irrigation. In addition the parol evidence disclosed that originally the whole 160 acres had been irrigated from an artesian well which had failed, after which the shallow water well was drilled and used for irrigation, and three witnesses of appel-lants all testified that to their knowledge from some time prior to 1937, not less than 134 acres had been irrigated.

From the foregoing review of the testimony it should be amply clear that a conflict was present in the evidence. Also, to our minds, not only does it appear that the findings of the trial court were based upon substantial evidence as required by our decisions, and when so based will not be disturbed on appeal, Luna v. Flores, 64 N.M. 312, 328 P.2d 82, but in addition if we add our own appraisal of said evidence, as contended for by appellant, we can say it clearly preponderates in favor of the findings as made by the court. To conclude that the 129.4 acre figure should prevail when an employee whose authority is not shown has stated in a letter that the records disclose this amount is to give undue weight to such evidence while minimizing all the other records showing 120 acres or less, the license for 120 acres and appellant's own statement claiming only 115.4 acres. The error in such procedure should be patent.

Finding no error, the order of the lower court is affirmed and

It is so ordered.

LUJAN, C. J., and McGHEE, COMPTON, and CARMODY, JJ., concur.