431 P.2d 45

**STATE of New Mexico ex rel. STATE EN-
GINEER, Pecos Valley Artesian Conserv-
ancy District, City of Artesia, New Mexico
and City of Roswell, New Mexico, Plain-
tiffs-Appellees,**

v.

**R. L. CRIDER et al., Defendants-Appellants.**

**No. 8138.**

Supreme Court of New Mexico.

June 5, 1967.

Rehearing Denied Sept. 6, 1967.

Harris & Norwood, Roswell, for appel-
lants.

Watson & Watson, Artesia, for City of
Artesia.

James B. Stapp, City Atty., Roswell, for Roswell.

## OPINION

SPIESS, Judge, Court of Appeals.

This is one of several appeals which have reached this court from the proceedings commenced by the State of New Mexico on relation of the State Engineer and Pecos Valley Artesian Conservancy District to adjudicate rights to the use of the waters of the Roswell Artesian Basin.

The appellants, R. L. Crider and others, were joined as defendants and decreed to have valid rights to the use of the water for the irrigation of specified tracts of land. The appellees, City of Roswell, New Mexico, and City of Artesia, New Mexico, were likewise joined as defendants and were decreed to have valid rights to appropriate water for their respective purposes. The appellees will be separately referred to as Roswell and Artesia, and collectively as the cities.

These adjudication proceedings were brought under §§ 75–4–4 and 75–4–6, N.M. S.A., 1953, and contemplated a determination and adjudication of all claims to the use of the waters of the basin.

At the outset of the proceedings and in view of the large number of rights and parties involved a special master was appointed to hear evidence, make findings of fact and conclusions of law, and report the same to the court with his recommendations.

In due time the cities were given notice of a hearing before the master and as a result an interlocutory decree was entered on August 13, 1962, by the court decreeing various rights in the cities.

It is relevant here to note that throughout this litigation the special master conducted separate hearings with respect to the defendants and notice of hearing was given only to the defendant or defendants, whose rights were the subject of the particular hearing. Accordingly, the appellants were not given notice of the hearing involving the rights of the cities nor did they participate therein.

We considered this procedure in State ex rel. Reynolds v. Sharp, 66 N.M. 192, 344 P.2d 943 (1959) and stated:

"It is true that no decree declaring 'the priority, amount, purpose, periods and place of use * * * the specific tracts of land to which it shall be appurtenant, together with such other conditions as may be necessary to define the right and its priority' as required by § 75–4–8, N.M. S.A., 1953, can be entered concerning the waters of the Roswell Artesian Basin until hydrographic surveys thereon have been completed and all parties impleaded, at which time it is contemplated a further hearing to determine the relative rights of the parties, one toward the other, will be held. We cannot say that when this is done, and a decree entered pursuant to the provisions of § 75–4–8 quoted above, all of the statutory requirements will not have been met."

See also State ex rel. Reynolds v. Allman, decided April 17, 1967, 78 N.M. 1, 427 P.2d 886.

After hearings before the special master had been concluded and interlocutory decrees had been entered determining the respective rights of all defendants as to plaintiffs a notice of final hearing was given for the purpose of determining the relative rights of defendants one toward the other. At this point appellants filed written objections to the interlocutory decree adjudicating the rights of the cities. It appears to have been contemplated by the parties and the court that absent an objection to an interlocutory decree it would be incorporated into the final decree.

In accordance with their claim the interlocutory decree awarded the cities the right to divert and appropriate waters of the basin in the following quantities:

Roswell: The full capacity of six designated wells but not to exceed 4 billion gallons annually. Four billion, nine hundred sixty million gallons annually by means of

five designated wells. 2,025.83 acre feet of water per annum through certain irrigation rights acquired from various sources.

Artesia: The full capacity of four wells but not to exceed 946,000,000 gallons annually. Nine hundred forty six million gallons annually by means of two designated wells. 1,506.9 acre feet of water per annum through certain irrigation rights acquired from various sources.

Appellants' objections to the interlocutory decree insofar as pertinent to this appeal are the following:

(1) No showing was made as to the amount of water which the cities had applied to beneficial use.

(2) No evidence was adduced before the court to show any relationship between the capacity of the wells utilized by the cities and the amount of water which they had applied to beneficial use.

(3) A different standard was applied in adjudicating the rights and priorities of the cities than was applied as to appellants.

These objections were overruled by the court on April 30, 1965. On January 10, 1966, a judgment denominated "Partial Final Judgment and Decree" was entered by which the cities were decreed the rights specified in the interlocutory decree to which appellants had objected. The appeal was from the final judgment.

The cities have moved this court to dismiss the appeal on the following grounds:

(1) The judgment entered August 13, 1962, was a full and final adjudication and this appeal consequently is not timely.

(2) The order of the trial court of September 30, 1965, overruling the objections to the interlocutory judgment was an order practically disposing of the merits of the action and the appeal having been taken February 8, 1966, was not timely.

(3) It is further suggested that this appeal should be dismissed for the reason that counsel who now represent appellants represented plaintiffs, the State of New Mexico, and Pecos Valley Artesian Conservancy District at the time the interlocutory judg-

ment of August 13, 1962, was rendered and as such counsel took an appeal from the judgment to this court which was thereafter dismissed.

The motion to dismiss the appeal was denied with leave to renew when the case was submitted upon its merits. We will now dispose of the motion.

■ The first ground of the motion is, in our opinion, disposed of by State v. Sharp, supra, and State ex rel. Reynolds v. Allman, supra, wherein we held that a further hearing after entry of the interlocutory judgment was required to determine the rights of the parties one toward the other. Appellants by their motion were simply exercising their right to a hearing to which they were clearly entitled.

The second ground of objection involves Supreme Court Rule 5(2) (21-2-1(5) (2), N.M.S.A., 1953), providing: "Appeals * * [shall be] entertained by the Supreme Court, in all civil actions, from such interlocutory judgments * . * * * of district courts, as practically dispose of the merits of the action * * *".

The rule further provides that application for allowance of appeal under this section must be made within 30 days from the entry of the judgment or decision appealed from.

■ In Torrez v. Brady, 37 N.M. 105, 19 P.2d 183 (1932), we considered this question under an appellate rule identical in language to the rule considered here except only as to the time provided for the taking of appeal and contrary to the cities' contention held: "Upon appeal from the final judgment interlocutory orders or decrees and proceedings upon which they are based may be reviewed even though an appeal might have been taken therefrom at the time entered."

■ The third ground for dismissal is likewise, in our opinion, without merit. It is fundamental that a client is not bound by any act done or knowledge acquired by his attorney before being retained by the client, of course in so holding we express

no opinion as to the propriety of the acts of the attorney.

For the reasons stated we deny appellee's motion to dismiss the appeal.

Consideration is next given to the appeal upon its merits. Appellants first assert that the trial court erred in adjudicating the rights of the cities on the capacity of wells while adjudicating appellants' rights on the amount of water they had applied to beneficial use.

It is argued in substance that the cities' rights should not have exceeded in quantity the amount of water they had actually applied to beneficial use.

█ We fully recognize the rule that application of water to beneficial use is essential to a completed appropriation. Pecos Valley Artesian Conservancy District v. Peters, 52 N.M. 148, 193 P.2d 418 (1948); Carlsbad Irrigation District v. Ford, 46 N.M. 335, 128 P.2d 1047 (1942).

The rule stated is applicable to all appropriations of public waters and includes agricultural uses as well as domestic and municipal.

The argument that the cities' rights should have been treated in the same manner as those of appellants overlooks certain fundamental differences. Appellants' use of water and the right decreed to them was for the irrigation of a specified tract of land. The right was a completed appropriation certain as to amount and place of use.

█ It appears to be undisputed that neither Roswell nor Artesia have made actual use of the full amount of water decreed to them. The claim however contemplated water for future use to meet requirements resulting from the increase in population. The right to appropriate water for future use is fully recognized by most authorities. Wiel Water Rights, § 483 states:

"In considering the amount of water to which an appropriator is entitled, there is introduced a new feature to meet the requirements of irrigation. The history and principles so far stated show that the system of appropriation aims fundamentally at definiteness and certainty. It allowed the prior appropriator to take what he wanted and do with it what he wanted, if he let the world know, so that later comers would have to take things as they found them, and would know what they could take. Consequently, as regards the limitation to beneficial use, later appropriators had to look solely at the amount the prior appropriator was actually applying to a beneficial purpose at the time the subsequent claimant arrived. For any enlargement of amount used thereafter the prior claimant had to take his chances with others at the time he sought to increase the amount.

"But while in mining a fixed amount may usually be sufficient from the start for all purposes, in irrigation of newly settled land it will not. The need for water grows as the area cultivated grows. The settler can cultivate, perhaps, only a few acres the first year; but he does everything with a view to later expansion. As is said in one case, it is reasonable to suppose that reclamation of the entire area owned at the time of diversion is contemplated. Before his larger acreage is cleared and planted, however (which may take several years), other claimants to the use of the water have arrived. Does the law allow the former to continue increasing his use in the face of these later claimants?

"It seems well settled that such is the rule. The amount used need not be fixed, constant quantity. The amount used is still a limit, as previously set forth. But it is a movable limit, which may gradually increase as the irrigator's needs increase. The principle has been repeatedly affirmed."

Kinney on Irrigation and Water Rights, Vol. 2, page 1568, contains the following:

" * * * the authorities agree upon the proposition that, where the purpose of the appropriation is for the irrigation of new land by a settler, although the

quantity first used is not the full amount claimed, the settler may year by year increase the quantity used, as he gets his land ready for cultivation, up to the full amount of his claim, and that, too, as against the claims of subsequent appropriators, provided that he does not delay the final use of all the water claimed for an unreasonable time. Under this state of facts, it is the well-settled rule that where he has used reasonable diligence the additional application of the water annually to meet the augmented demand causes the appropriation to relate back to the inception of the claim, thereby cutting off all adverse claimants to the use of the water, where their claims interfere with the rights of the settler who was prior in time. Or, in other words, the rule is that, at the time of the inception of his claim, he may lay the foundation for the appropriation of such a quantity of water as will be necessary, when economically used, for the reclamation of his entire tract of land, and he will not lose his priority of right, provided he makes use of all of the water claimed within a reasonable time."

Compare State ex rel. Reynolds v. Mendenhall, 68 N.M. 467, 362 P.2d 998 (1961) and authorities therein cited.

We see no reason why the rule stated should not apply to the future use of water by cities intended to satisfy needs resulting from normal increase in population within a reasonable period of time. Compare City and County of Denver v. Sheriff, 105 Colo. 193, 96 P.2d 836 (1939).

The rights decreed to the cities conform with the requirements of § 75-4-8, N.M. S.A., 1953, providing: " * * * Such decree shall in every case declare, as to the water right adjudged to each party, the priority, amount, purpose, periods and place of use * * *"

The maximum amount of water which could be withdrawn from the basin by the cities is fixed by the decree as was the purpose, period and place of use.

Appellants appear to have considered the question involved as though it related to a completed appropriation of water for the irrigation of a specific tract of land. They have not considered the rule under which an appropriation for future need is authorized. See Sowards v. Meagher, 37 Utah 212, 108 P. 1112 (1910). It is this rule which we feel was applied by the trial court in the adjudication of the rights of the cities.

We add, however, that the cities' rights to the appropriation of water for future use is subject to the condition that the needed water be applied to beneficial use within a reasonable time. If not so applied such right may be lost. We do not consider the decree erroneous upon the above grounds asserted by appellants.

Appellants' final contention relates to the right accorded Roswell by the decree to appropriate 390 million gallons annually from a well designated as R.A. 681. The well involved was initially in the name of Roswell Cemetery Association, an agency of the city of Roswell, and was used for the irrigation of 31 acres of land. It appears that in 1952 the State Engineer approved the construction of a new well for the irrigation of 31.4 acres and domestic use. Appellants argue that the right was limited to the quantity of water first appropriated and it was error to decree to Roswell more than such amount.

It appears that this appropriation was complete and did not involve future need, hence although Roswell did by permission of the State Engineer construct a new well and secured the right to partially change the use of the water it was nevertheless limited to the quantity appropriated.

Wiel Water Rights, Vol. 1, § 498 contains the following statement:

"No change will be permitted to result in any greater draft upon the river than before the change, and the use after the change is in all ways measured and fixed (where it conflicts with existing owners) by the same limitations which the law

would impose upon its use before the change."

It is our opinion that Roswell is limited in the use of the well R.A. 681 to 93 acre feet of water per annum, approximately 31 million gallons on an annual basis.

This cause is remanded with directions to modify the decree by reducing the quantity of water which may be withdrawn annually from well R.A. 681 to 31 million gallons. The decree should be further modified so as to indicate that the appropriation for future use is subject to the condition that the water be applied to beneficial use within a reasonable time. In other respects the decree is affirmed.

It is so ordered.

COMPTON and CARMODY, JJ., concur.