UNITED STATES of America, in its own right and for and on behalf of the Acoma and Laguna Indian Pueblos, Plaintiffs,

v.

BLUEWATER–TOLTEC IRRIGATION DISTRICT, et al., Defendants.

KERR–McGEE CORPORATION, et al., Plaintiffs,

v.

UNITED STATES of America, et al., Defendants.

CITY OF GRANTS, et al., Plaintiffs,

v.

UNITED STATES of America, et al., Defendants.

Civ. Nos. 82–1466BB, 83–1462BB and 83–1540BB.

United States District Court, D. New Mexico.

Feb. 27, 1984.

White, Koch, Kelly & McCarthy, P.A., Benjamin Phillips, Paul L. Bloom, Santa Fe, N.M., for plaintiffs in No. 83–1540BB.

Peter C. Monson, Land and Natural Resources Div., Dept. of Justice, Washington, D.C., Herbert A. Becker, Asst. U.S. Atty., Albuquerque, N.M., for United States in Nos. 83–1540BB, 83–1462BB, 82–1466BB.

Stephenson, Carpenter, Crout & Olmstead, William P. Templeman, Santa Fe, N.M., for defendant UNC in No. 83–1540BB.

Campbell, Byrd & Black, P.A., Bruce D. Black, Santa Fe, N.M., Robert W. Micsak, Denver, Colo., for defendant Gulf Oil in No. 83–1540BB.

Mason & Rosebrough, P.A., James Jay Mason, Gallup, N.M., Hinkle, Cox, Eaton, Coffield & Hensley, Richard A. Simms, Santa Fe, N.M., for plaintiff Kerr-McGee, Atlantic Richfield & Fernandez Co. in No. 83–1462BB.

Peter White, State Engineers Office, Santa Fe, N.M., for defendant S.E. Reynolds in No. 83–1462BB.

Douglas Meiklejohn, Kevin V. Reilly, Asst. Attys. Gen., Santa Fe, N.M., for defendant State of N.M. in Nos. 83–1462BB, 83–1540BB.

Modrall, Sperling, Roehl, Harris & Sisk, P.A., Clifford K. Atkinson, Albuquerque, N.M., for Exxon in No. 83–1540BB.

Rodey, Dickason, Sloan, Akin & Robb, P.A., John D. Robb, Albuquerque, N.M., for defendant Sohio in No. 83–1540BB.

Kendall Fischer, Hugh W. Parry, Asst. Attys. Gen., New Mexico State Highway Dept., Santa Fe, N.M., for defendant N.M. State Game Com'n N.M. State Highway Com'n in No. 83–1540BB.

Montgomery & Andrews, P.A., John B. Draper, Santa Fe, N.M., for defendant El Paso Natural Gas in No. 83–1540BB.

## MEMORANDUM OPINION

BALDOCK, District Judge.

These three suits involve the determination of water rights to the Rio San Jose which runs through McKinley, Cibola and Valencia Counties in New Mexico. N.M. State Hwy. Dep't and Commerce and Ind. Dep't, Travel Map of New Mexico. The Rio San Jose empties into the Rio Puerco in the southwest corner of the Isleta Indian Reservation. T.M. Pearce, New Mexico Place Names—A Geographical Dictionary 135 (1965). The river touches Grants and crosses the Acoma and Laguna Indian Reservations. *Id.*

The first suit, *United States in its own right and for and on behalf of the Acoma and Laguna Indian Pueblos v. Bluewater-Toltec Irrigation District, et al.*, (hereinafter referred to as *Bluewater-Toltec*) was followed by *Kerr-McGee Corp., et al. v. United States, et al.* (hereinafter referred to as *Kerr-McGee*) and *City of Grants, et al. v. United States, et al.*, (hereinafter referred to as *City of Grants*). A brief procedural history of these three suits is necessary before reaching the substantive issues of subject matter jurisdiction, federal removal and the choice between federal or state adjudication of water rights.

### I. Procedural History

The first suit, *Bluewater-Toltec*, was filed on December 22, 1982, by the United States "in order to fulfill its trust responsibility to the tribes involved to preserve their rights from being barred by the lapse of the Statute of Limitations—28 U.S.C. § 2415; shortly thereafter Congress amended 28 U.S.C. § 2415 and extended the Statute of Limitations." *Bluewater-*

*Toltec,* Plaintiff's Memorandum in Support of Motion to File an Amended Complaint at 1. According to the complaint, the United States itself and on behalf of the Acoma and Laguna Indian Pueblos, sought a declaratory judgment as to the priority and quantity of the Pueblos' water rights as against the defendants. *Bluewater-Toltec* Complaint at ¶ 1. The United States also sought damages and a permanent injunction on a trespass theory against the defendants. *Id.* The complaint expressly stated that the action "does not seek a general stream adjudication to determine the full extent and measure of the Pueblos' rights to the use of the Rio San Jose, its tributaries, and underlying groundwater basin." *Bluewater-Toltec* Complaint at ¶ 1.

Various defendants in *Bluewater-Toltec* then sought a more definite statement in accordance with F.R.Civ.P. 12(e). By minute order filed July 7, 1983, the court ordered the United States to file a more definite statement. Rather than filing a timely more definite statement, the United States filed a motion to amend the complaint to seek precisely what the original complaint said was not sought—a general adjudication of the Rio San Jose. The United States has yet to provide a more definite statement and the court has not granted its motion to amend its complaint.

Two groups of defendants named in *Bluewater-Toltec* then sought a general stream adjudication pursuant to § 72–4–17, N.M.Stat.Ann. (1978), in state court. The first of these actions, *Kerr-McGee,* was filed in the District Court of the Thirteenth Judicial District, Cibola County, on August 15, 1983. The second action, *City of Grants,* also was filed in the District Court of the Thirteenth Judicial District, Cibola County, but on September 19, 1983. Both actions were removed to federal court by the United States within a month after each was filed. 28 U.S.C. § 1446(b). Plaintiffs in both cases filed motions for remand. 28 U.S.C. § 1447(c).

There are numerous pending motions in all three of these actions. Many issues overlap, therefore, the court will address the issues of subject matter jurisdiction, removal jurisdiction and the proper forum for adjudication of water rights in the context of certain pending motions.

While it is clear that the court has jurisdiction to consider the original federal court action, *Bluewater-Toltec,* under 28 U.S.C. § 1345, both plaintiffs and defendant United States contest whether the court's jurisdiction is properly invoked in the state court actions that were removed. The state court actions seek an adjudication of the Rio San Jose stream system under New Mexico's "all embracing" procedure for the determination of water rights on a stream system. *See El Paso & R.I. Ry. Co. v. Dist. Ct. of Fifth Judicial Dist.,* 36 N.M. 94, 8 P.2d 1064 (1931). This adjudication would be accomplished under chapter 72, N.M.Stat.Ann. (1978 & 1983 Supp.), and under 43 U.S.C. § 666, commonly known as the McCarran Amendment. The McCarran Amendment allows the United States to be sued in water rights adjudication matters. It operates as a waiver of sovereign immunity in either state or federal court. *In re Green River Drainage Area,* 147 F.Supp. 127 (D.Utah 1956).

Assuming that this court has jurisdiction over the state court actions, the parties contest whether the removal was proper in either action because all defendants did not join in the removal petitions. 28 U.S.C. § 1441 & 1446. Another key issue is whether this federal court should stay or dismiss the federal action in favor of the state court actions.

The court holds that the state court actions are sufficiently comprehensive to withstand the United States' motion to dismiss based on a failure to name all claimants and Indian sovereign immunity. There is a want of federal jurisdiction, however, over the removed actions. But even if removal jurisdiction could be sustained on a federal question theory, the removal of these state court actions would be defective because all defendants did not join in the removal petitions. After a review of this water litigation, the court concludes

that the federal action should be deferred in favor of a general adjudication of the Rio San Jose in state court.

## II. Subject Matter Jurisdiction

United States' Motions to Dismiss the Removed State Court Actions of *Kerr-McGee* and *City of Grants*

The United States wants the state court actions dismissed, after having removed them to federal court. Alternatively, the United States wants the state court actions consolidated with the federal court action, *Bluewater-Toltec.*

### A. Sovereign Immunity and the Sufficiency of the State Water Rights Adjudication

As to dismissal, the United States maintains that neither federal nor state court could entertain the state court water rights adjudication suits because neither action is sufficiently comprehensive so as to come under the McCarran Amendment's waiver of sovereign immunity. The actions are not comprehensive enough because the plaintiffs have failed to name all the claimants, according to the United States. If neither federal or state court had jurisdiction, dismissal of the removed actions would be proper.

▮▮▮▮ Section 72–4–17, N.M.Stat.Ann. (1978), requires that record claimants and all other claimants, so far as they can be ascertained, with reasonable diligence, shall be made parties to a general adjudication. Before a decree as provided in section 72–4–19, N.M.Stat.Ann. (1978), can be entered, known claimants must be impleaded. *New Mexico ex rel. Reynolds v. Sharp,* 66 N.M. 192, 196, 344 P.2d 943, 945 (1959). That is not to say, however, that all potential claimants must be made parties at the time the complaint is filed. In *New Mexico ex rel. Reynolds v. Sharp,* 66 N.M. 192, 194, 344 P.2d 943, 944 (1959), the New Mexico Supreme Court approved of adding parties as their identity became known, once the statutorily required hydro-

graphic survey had been completed. 66 N.M. at 196, 344 P.2d at 945. This method complied with New Mexico's all embracing procedure for the adjudication of a stream system.

▮▮▮▮ At this stage, either state court suit is adequate to constitute a general adjudication within the meaning of the McCarran Amendment. The United States Supreme Court has recognized New Mexico's "elaborate procedures for allocation of water and adjudication of conflicting claims to that resource," along with the procedures of four other southwestern states. *Colorado River Water Cons. Dist. v. United States,* (hereinafter referred to as *Colorado River*), 424 U.S. 800, at 804, 804 n. 2, 96 S.Ct. 1236, at 1239, 1240 n. 2, 47 L.Ed.2d 483 (1976). Merely because an adjudication will proceed over time and will join necessary defendants does not mean that the adjudication is not within the scope of the McCarran Amendment. *United States v. Dist. Ct. for Water Div. No. 5,* 401 U.S. 527 at 528, 91 S.Ct. 1003 at 1004, 28 L.Ed.2d 284 (1971) (Colorado state water proceeding which "reaches all claims, perhaps month by month but inclusively in the totality" is a general adjudication within the meaning of the McCarran Amendment.). The state court actions, by their express terms and in context of state water law can result in a general adjudication.

The United States attempts to apply *Dugan v. Rank,* 372 U.S. 609, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963) in support of its argument that no court would have jurisdiction over the state court suits because they do not constitute adjudications under the McCarran Amendment, 43 U.S.C. § 666. In *Dugan v. Rank,* however, the court merely reiterated that the McCarran Amendment applies to a general adjudication between all claimants, not to a private suit to determine the water rights of a few. A characterization of the state court actions in this matter as private suits is completely in error and ignores the language of both state court complaints.[1]

---

**1.** *City of Grants* has not named the State Engi- neer as a party defendant. The United States

### B. Sovereign Immunity and the Pueblos Fee Simple Ownership of Land

Pursuing its sovereign immunity argument, the United States suggests that no state court adjudication of Pueblo water rights could be comprehensive because the state court lacks jurisdiction over Indian water rights on lands held in fee, rather than in trust or outright by the United States. And absent a comprehensive adjudication, the United States does not waive its sovereign immunity under the McCarran Amendment, according to the United States.

█ This argument fails to acknowledge the guardianship relationship between the United States and the Indians as it concerns the fee simple lands of the Pueblos. *United States v. Candelaria*, 271 U.S. 432, 440, 46 S.Ct. 561, 562, 70 L.Ed. 1023 (1926); *United States v. Sandoval*, 231 U.S. 28, 48, 34 S.Ct. 1, 6, 58 L.Ed. 107 (1913). Congress may enact laws affecting the fee simple lands of the Pueblos pursuant to its guardianship function. The McCarran Amendment, 43 U.S.C. § 666, applies to Indian water rights. *Jicarilla Apache Tribe v. United States*, 601 F.2d 1116, 1133 (10th Cir.), *cert. denied*, 444 U.S. 995, 100 S.Ct. 530, 62 L.Ed.2d 426 (1979). This is true even though those rights may be appurtenant to fee simple Indian land.

█ Contrary to the United States position, there need not be a waiver of Indian sovereign immunity before a state court can exercise jurisdiction over Indian water rights. This is because a judgment against the United States, as trustee for the Indians, normally would bind the Indians. *Arizona v. San Carlos Apache Tribe* (hereinafter referred to as *San Carlos Apache*), ─── U.S. ───, 103 S.Ct. 3201, 3213 n. 17, 77 L.Ed.2d 837 (1983). Merely because Indian water rights are appurtenant to fee land

does not change this conclusion. *Cf. New Mexico v. Aamodt*, 537 F.2d 1102, 1111 (10th Cir.1976) *cert. denied*, 429 U.S. 1121, 97 S.Ct. 1157, 51 L.Ed.2d 572 (1977) (Pueblos are to be treated like other Indian communities—the fact that Pueblos hold fee simple title to their land makes no difference insofar as the consent of the United States is required before Pueblo land may be alienated.). The goal of a comprehensive and unified water rights adjudication implicit in the McCarran Amendment would be frustrated if a state court could not obtain jurisdiction over all Indian and non-Indian claims. *See* S.Rep. No. 755, 82d Cong. 1st Sess. 4–6 (1951), *printed in* 4 United States Serials Set No. 11489 (1951). (Proper adjudication and administration of water rights requires all water claimants along a water course, including the United States, to be amenable to State law.)

Of course, the state courts will decide their own jurisdiction over Indian water claims. *Northern Cheyenne Tribe v. Adsit*, 721 F.2d 1187 (9th Cir.1983). The inquiry made by this court is to detect readily apparent jurisdictional defects that would make the state court proceedings inadequate.

For all of the foregoing reasons, the United States' Motions to Dismiss *Kerr-McGee* and *City of Grants* for lack of subject matter jurisdiction are denied.

### III. Removal Jurisdiction

#### *Kerr-McGee* and *City of Grants* Plaintiffs' Motions to Remand

The *Kerr-McGee* and *City of Grants* plaintiffs question whether the United States properly removed those state court actions to federal court. The United States premises its removal on 28 U.S.C. § 1441. The parties do not dispute that the McCarran Amendment did not limit removal jurisdiction. *See Colorado River*, 424 U.S. at

---

argues that the failure to name the State Engineer makes the *City of Grants* action insufficient for the McCarran Amendment's waiver of sovereign immunity. The state court in an adjudication is to direct the State Engineer to make or furnish a hydrographic survey; the statute does not say that the State Engineer must be joined

as a party, though this probably would be the usual course. *See* N.M.Stat.Ann. § 72–4–17 (1978). The *Kerr-McGee* suit does name the State Engineer and in all likelihood *Kerr-McGee* and *City of Grants* will be consolidated at the state court trial level.

809 n. 15, 96 S.Ct. at 1242 n. 15. The *Kerr-McGee* plaintiffs, however, argue that removal cannot be sustained under federal question jurisdiction. 28 U.S.C. § 1441(b), § 1331. The United States has the burden of establishing that removal was proper. *Wilson v. Republic Iron & Steel,* 257 U.S. 92, 97, 42 S.Ct. 35, 37, 66 L.Ed. 144 (1921).

### A. Federal Question Removal Jurisdiction

 For purposes of removal jurisdiction, a case arises under the federal constitution, treaties or laws, only if the federal right created is an essential element of a plaintiff's case. *Gully v. First National Bank in Meridian,* 299 U.S. 109, 112, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936). A plaintiff's case must depend upon construction of that federal right in accordance with federal law. *Id.* The federal right must appear on the face of the complaint, and not by way of defense. *Louisville & Nashville R.R. v. Mottley,* 211 U.S. 149, 152, 29 S.Ct. 42, 43, 53 L.Ed. 126 (1908). The complaint is viewed alone, unaided by the answer or petition for removal. *State of Oklahoma ex rel. Wilson v. Blankenship,* 447 F.2d 687, 690–92 (10th Cir.1971), *cert. denied,* 405 U.S. 918, 92 S.Ct. 942, 30 L.Ed.2d 787 (1972).

 The United States first argues that removal jurisdiction is proper because the federal court would have had original jurisdiction under the McCarran Amendment. Although the McCarran Amendment provides that the United States may be joined as a defendant in a water rights adjudication suit, 43 U.S.C. § 666(a), it does not confer independently federal jurisdiction. *State of New Mexico ex rel. Reynolds v. United States,* 408 F.Supp. 1029, 1030 (D.N.M.1975). In this case, it is necessary to review the procedural posture of each case as well as the complaints in determining whether a federal question is presented for purposes of removal.

*Kerr-McGee* is a suit by numerous individual, corporate and associational plaintiffs against defendants United States, State of New Mexico, the State Engineer and the Bluewater-Toltec Irrigation District. *City of Grants* is a suit by Grants, Grants Municipal Airport, and Grants Municipal Schools against numerous corporate, associational and governmental defendants. Both suits seek a general adjudication of the Rio San Jose stream system. The immediate source of the plaintiffs' water rights is in state law. The state law mechanism for such a determination is a general adjudication.

 The complaints of *Kerr-McGee* and *City of Grants* do not allege that federal statutes or treaties are the direct source of the plaintiffs' water rights and the court will not take judicial notice of this theory. *See New Mexico ex rel. Reynolds v. Molybdenum Corp. of America,* 570 F.2d 1364, 1366 (10th Cir.1978). The complaints do allege that the United States itself, and on behalf of Indians, claims water rights under federal law as defendants. This, however, is insufficient to create federal question jurisdiction because it appears in the complaint as an anticipated defense. *Taylor v. Anderson,* 234 U.S. 74, 75–76, 34 S.Ct. 724, 725, 58 L.Ed. 1218 (1914). Merely because questions of federal law will emerge as the suit progresses is not enough to create federal question jurisdiction.

At least three reported cases have involved removal of state court general adjudications. In the Arizona cases in *San Carlos Apache,* —— U.S. ——, 103 S.Ct. 3201, 77 L.Ed.2d 837 (1983), the Court determined that the district court was correct in remanding the state general adjudications based on the principles of *Colorado River,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). Neither the Supreme Court nor the federal district court commented on federal removal jurisdiction over the state general adjudication. *San Carlos Apache,* —— U.S. ——, 103 S.Ct. 3201, 77 L.Ed.2d 837; *Salt River Pima-Maricopa Indian Community v. Arizona,* 484 F.Supp. 778 (D.Ariz.1980).

In *South Dakota ex rel. Meierhenry v. Rippling Water Ranch,* 531 F.Supp. 449 (D.S.D.1982), the court concluded that

there was federal removal jurisdiction where the United States was a defendant in a general adjudication brought by South Dakota. Unlike *Kerr-McGee* and *City of Grants*, the general adjudication was brought about by the state. South Dakota acted pursuant to its statutory authority to initiate general adjudications, rather than as a claimant of water rights. 531 F.Supp. at 531. The state court complaint did raise federal questions because the state, pursuant to its authority to secure the benefits of a general adjudication, sought an adjudication of all federal and state claims. 531 F.Supp. at 454–55. In *Kerr-McGee* and *City of Grants*, the plaintiffs rest on their individual water rights. Their individual claims do not furnish a direct link to federal rights that may be present when the state seeks a general adjudication.

Finally, in *New Mexico ex rel. Reynolds v. United States*, 408 F.Supp. 1029 (D.N.M. 1975), the court concluded that removal by the United States of a state general adjudication was improper because no federal question jurisdiction was present, nor could the removal be sustained under 28 U.S.C. § 1441(c) (separate and independent claim). 408 F.Supp. at 1030.

 The United States argues that the *Kerr-McGee* plaintiffs have used artful pleading to conceal federal questions and, thus, close off its right to federal court by way of removal. *See Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 397 n. 2, 101 S.Ct. 2424, 2427 n. 2, 69 L.Ed.2d 103 (1981). This is not correct. To say that all the plaintiffs' water right claims depend upon federal law is oversimplification and conjecture. Absent fraudulent concealment, it is improper to recast the plaintiffs' complaint to produce a federal question. *Crow v. Wyoming Timber Products Co.*, 424 F.2d 93, 95 (10th Cir.1970); *Warner*

*Bros. Records, Inc. v. R.A. Ridges Dist. Co.*, 475 F.2d 262, 265 (10th Cir.1973).

### B. Joinder of Defendants and Removal

 Even if there was a federal question on the face of either complaint, the removal of *Kerr-McGee* and *City of Grants* was improper because all named defendants did not join the United States in seeking removal. Removal under 28 U.S.C. § 1441(b) requires that those defendants joined and served must join the removal petition.[2] 1A J. Moore, Moore's Federal Practice ¶ 0.168[3.–2–2] at 551 (1983).

The rule requiring that all defendants join the removal petition is not without exception. Nominal or formal parties, unknown defendants and defendants fraudulently joined need not join the petition for removal. *Id.* at 550–51. The United States suggests that the joinder should not be required in a water rights suit because all claimants are adverse to one another and all defendants are merely nominal insofar as each party's claim is concerned. The United States then suggests that each party ought to be able to remove.

 This confusing line of thinking is hardly convincing. In a New Mexico water rights adjudication, a water rights claimant is an indispensable, rather than nominal, party. *New Mexico ex rel. Reynolds v. W.S. Ranch Co.*, 69 N.M. 169, 174–75, 364 P.2d 1036 (1961). If all defendants were nominal parties, not even defendant United States would be able to remove. The United States' suggestion that any party ought to be able to remove unilaterally simply does not follow from its argument.

Only if the court were to realign all of the other defendants as plaintiffs would the United States have satisfied the joinder requirement. But given the interrelationship of the claims in a water rights suit, there is no convincing reason why all the

**2.** There are at least two reasons why all defendants should have been required to join the removal petition, had there been a federal question. One defendant ought not to be able to impose its choice of a federal forum on unwilling defendants in addition to unwilling plaintiffs. Additionally, state courts are fully compe-

tent to hear those matters where there is concurrent federal and state jurisdiction and the plaintiffs' choice of a state forum should be given deference to the extent that jurisdictional questions on removal should be construed against removal. *Hess v. Great Atl. & Pac. Tea Co., Inc.*, 520 F.Supp. 373 at 375 (N.D.Ill.1981).

claimants but the United States should be realigned as plaintiffs. There is a finite amount of water, the plaintiffs' dispute is not only with the United States but also with the other claimants.

■ Nor could the United States escape the joinder requirement by relying on removal pursuant to 28 U.S.C. § 1441(c), assuming there was a federal question on the face of the complaints. Under 28 U.S.C. § 1441(c), a defendant who is a necessary party to a separate and independent claim that is removable may remove the entire action unilaterally, but the *Kerr-McGee* and *City of Grants* complaints seek an adjudication of all claims to one stream system, the Rio San Jose. Because all claims must be evaluated among themselves in a general adjudication brought by the State, there cannot be separate and independent claims, some based on federal law while the remainder are based on state law. This is not a situation where the controversy between the plaintiffs and the United States could be determined and complete relief afforded without the presence of any other original parties to the actions, therefore, neither *Kerr-McGee* nor *City of Grants* would have been removable under § 1441(c), even assuming the complaints contained a federal question. 14 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3724 at 624 (1976) *cited in South Dakota ex rel. Meierhenry v. Rippling Water Ranch,* 531 F.Supp. 449, 457 (D.S.Dak.1982) (State general adjudication not removable absent all defendants joining in petition for removal).

The court finds that there simply is no federal question jurisdiction which would justify removal of the state court actions. But even if there was such a federal question, removal was defective because the United States did not get the signatures of all defendants on its removal petitions.

### C. Removal under 28 U.S.C. § 1441(a) and § 1345

■ The United States lastly argues for removal jurisdiction under 28 U.S.C. § 1441(a) and § 1345, merely because it was named as a defendant in the state court actions. It relies on *State of New Mexico ex rel. Reynolds v. Molybdenum Corp. of America,* 570 F.2d 1364 (10th Cir.1978), where the court considered federal jurisdiction regarding a general adjudication brought by New Mexico. In that case, the United States originally was named as a defendant. The United States filed a motion to intervene and the court realigned it as a plaintiff. The United States then filed a complaint in intervention. The Tenth Circuit concluded that federal jurisdiction existed over the matter because the United States had entered the suit as a claimant and that was sufficient to confer federal jurisdiction under 28 U.S.C. § 1345. 570 F.2d at 1366.

Great reliance is placed on the following passage:

> As a practical matter, a general water adjudication is comparable to interpleader. New Mexico asks that all water users assert their claims and have them determined. The intent is to obtain a complete ascertainment of all existing rights. (citation omitted). Each person is interested both in the determination of his own claim and in the extent of validity of other claims (citation omitted). *In the situation presented,* no good purpose is served by quibbling whether a party is a plaintiff or defendant. The United States has entered the suit as a claimant asking that its rights be determined. *This action* confers federal jurisdiction under § 1345.

570 F.2d at 1366 (emphasis added). This sweeping language does not apply to the United States in *Kerr-McGee* or *City of Grants,* however.

First, the State of New Mexico, rather than private water claimants, brought suit in that case. Second, the United States behaved like a claimant in that case by seeking intervention and then obtaining realignment as a plaintiff. In the removed cases before the court, the United States has not been realigned as a plaintiff, has not sought leave to realign as a plaintiff, but instead immediately moved to dismiss both suits. *See Fidelity & Casualty Co. v.*

*Reserve Ins. Co.,* 596 F.2d 914 (9th Cir. 1979). *Kerr-McGee* and *City of Grants* are hardly suits commenced by the United States with the attendant consequences of such suits. *See* 3 J. Moore, Moore's Federal Practice ¶ 13.28 at 13–162 at 13–165 (1983).

For all of the foregoing reasons, *Kerr-McGee* and *City of Grants* plaintiffs' Motions to Remand are granted, however, the court will not award costs and attorneys fees to the plaintiffs pursuant to 28 U.S.C. § 1447(c).

IV. The Adjudication of the Rights of the Rio San Jose Stream System in State Court and the Private Water Rights Suit in Federal Court

### *Bluewater-Toltec* Defendants' Motion to Dismiss

Several corporate and individual *Bluewater-Toltec* defendants have filed a motion to dismiss the federal court trespass action pending the general adjudication of the Rio San Jose stream system. The disposition of this motion is controlled by the principles set forth in *Colorado River,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), and *San Carlos Apache,* — U.S. —, 103 S.Ct. 3201, 77 L.Ed.2d 837 (1983). The court must decide whether to defer to the state proceedings or move ahead with the federal action.

### A. Federal Jurisdiction and the Exceptional Circumstances Test

There can be no doubt that the court has jurisdiction under 28 U.S.C. § 1345 over the subject matter of *Bluewater-Toltec.* The McCarran Amendment did not limit the court's jurisdiction under section 1345. *Colorado River,* 424 U.S. 800, 809, 96 S.Ct. 1236, 1242, 47 L.Ed.2d 483 (1976). The real issue is whether the policy underlying the McCarran Amendment and principles of sound judicial administration necessitate deferring to the state court general adjudication.

The United States reminds the court of its "virtually unflagging obligation" to exercise its federal jurisdiction. *Colorado River,* 424 U.S. at 817, 96 S.Ct. at 1246.

This general proposition, however, gives substantially less guidance to the court in water rights litigation than might otherwise be the case because water rights adjudication is a "virtually unique type of proceeding" and the McCarran Amendment is a "virtually unique federal statute." *San Carlos Apache,* 103 S.Ct. at 3216.

■ An "exceptional-circumstances" test was developed in *Colorado River* for arriving at when a federal court proceeding should be deferred in favor of a parallel state court proceeding. *Moses H. Cone Memorial Hosp. v. Mercury Constr.,* — U.S. —, 103 S.Ct. 927, 936–37, 74 L.Ed.2d 765 (1983). The exceptional circumstances test does not rest on grounds of state and federal comity or abstention, but rather on "considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Id.* 103 S.Ct. at 936. There is no mechanical checklist for deciding whether a federal action should be deferred, rather there must be an ad-hoc balancing with the balance heavily weighted in favor of exercising jurisdiction. *Id.*

*Colorado River* and *San Carlos Apache* are applications of the exceptional circumstances test in the context of water law and, therefore, provide the most guidance. In *Colorado River,* the court recognized that the McCarran Amendment was enacted largely to avoid piecemeal adjudication of water rights in a river system. 424 U.S. at 819, 96 S.Ct. at 1247. The possibility of inconsistent determinations which generate additional litigation is certainly lessened if there is a single proceeding for the adjudication of water rights. The McCarran Amendment, which allows the United States to be joined as a defendant in a water rights adjudication, implicitly recognizes that a comprehensive state system for the adjudication of water rights promotes a unified and consistent determination of water rights.

The court in *Colorado River* decided that the federal district court correctly dismissed a private federal water rights suit brought by the United States in favor of

state proceedings that would result in a general adjudication. The policies underlying the McCarran Amendment were by far the most important factor in the Court's decision to approve dismissal, but other factors were considered. *Moses H. Cone Mem. Hosp. v. Mercury Constr.*, 103 S.Ct. at 937.

In *Colorado River*, the following other factors supported dismissal of the federal suit. First, the federal court proceeding had just begun and the state proceeding was well underway. Second, numerous state law water rights were at issue. Third, the distance between the federal district court and the state court where the general adjudication would occur was some 300 miles; the state forum was more convenient. Fourth, the United States had participated in various state court general adjudications. The court in *San Carlos Apache* also premised dismissing or staying a federal action on another factor, the adequacy of state court proceedings to quantify federal water rights. *San Carlos Apache*, 103 S.Ct. at 3215. *Cf. Moses H. Cone Memorial Hospital v. Mercury Constr.*, 103 S.Ct. 927 at 943 (1983).

### B. The Exceptional Circumstances Test Applied

#### 1. The Policy Underlying the McCarran Amendment

Considerations of wise judicial administration weigh heavily against concurrent state and federal proceedings in this matter and in favor of a general adjudication that will occur in state court. As a practical matter, the priority and quantity of all water rights on the Rio San Jose needs to be determined before the court could consider the damages and injunctive relief sought by the United States in *Bluewater-Toltec* on a trespass theory. Moreover, as to the declaratory judgment sought by the United States in *Bluewater-Toltec* as against all holders of water rights on the Rio San Jose, the state court general adjudication will declare the rights not only of the United States, but also of all holders of water rights. At best, it would be inefficient for both federal and state court to

determine the water rights of the United States. At worst, multiple determinations could lead to inconsistent and conflicting results.

The United States urges the court to press on with *Bluewater-Toltec*, even though the general adjudication of the Rio San Jose will proceed in state court. This court, pursuant to 28 U.S.C. § 1345, may ultimately hear the federal trespass action and the United States will be delayed if its suit is dismissed pending the state court general adjudication. This delay, however, is reasonable given the inherent likelihood of conflict and duplication of parallel federal and state proceedings.

█ Another reason the United States gives for going forward with *Bluewater-Toltec* is that the state courts lack jurisdiction to adjudicate the water rights appurtenant to Pueblo fee lands absent a waiver of Indian sovereign immunity. This court rejects that proposition. *See* point II(B), *supra* at 8.

█ Finally, the United States argues that the federal court may have to decide anew certain issues litigated in the state court general adjudications. As an example, the United States suggests that non-Indian claimants will seek to establish early priorities in the general adjudication and then turn around in the federal trespass action and seek to establish that use did not occur until later so as to minimize trespass damages.

This argument misses the mark because the principles of res judicata and collateral estoppel will apply when the federal court hears the trespass action. Moreover, the non-Indian claimants are unlikely to make the above argument given that beneficial use is the basis, measure and limit of the right to use water in New Mexico, N.M. Const. art. XVI, § 3, and unused water rights may be forfeited. *See Jicarilla Apache Tribe v. United States*, 657 F.2d 1126, 1133–36 (10th Cir.1981).

#### 2. The Progress of the Federal and State Actions

There are supplemental factors which should be considered in determining wheth-

er the federal trespass action should be dismissed. First, the progress of the state and federal actions needs to be considered. The federal action was filed first, in December of 1982. Shortly thereafter, in September of 1983, the first state court action was filed. In theory, either the federal or the state actions could proceed as general adjudications.

 Merely because the federal action was filed first does not bar dismissal. In discussing the Montana cases considered in *San Carlos Apache*, 103 S.Ct. at 3207, the Court approved dismissal of several federal actions in favor of comprehensive state proceedings where the first federal suit was filed in January of 1975, the state court suit was filed in July of 1975, and "no appreciable progress" was made in the state court suit by 1979. *San Carlos Apache*, 103 S.Ct. at 3207. Service of process was completed, answers were submitted and discovery has begun in the initial federal proceeding which was dismissed in 1979 by the federal district court. *Id.*

For the most part, the cases before the court have not progressed to any appreciable degree. While it is true that far more claimants to the Rio San Jose have been served in *Bluewater-Toltec*, there is some question as to the adequacy of the service by mail used by the United States. *See United States v. Bluewater-Toltec Irrigation Dist.*, CV 82–1466 BB (D.N.M. February 7, 1984). Moreover, the United States, in the event that the action proceeded would be required to furnish a more definite statement to all defendants. The state court actions, *Kerr-McGee* and *City of Grants*, were removed immediately after filing in state court; no significant progress has been made.

In preparing for *Bluewater-Toltec*, however, the United States expended some $300,000 on a hydrographic survey. Affidavit of Frank Jones, Area Rights Protection Officer for Albuquerque, N.M. Area Office, Bureau of Indian Affairs, Dep't of the Interior (September 2, 1983). An additional $300,000 would be necessary to complete the survey. *Id.* Not proceeding with the federal action could waste government resources, but it is unlikely that the hydrographic survey prepared by the United States will be a complete waste of federal funds.

The New Mexico State Engineer is responsible for making a hydrographic survey when so ordered by the state district court. N.M.Stat.Ann. §§ 72–4–13 and 72–4–17 (1982 Supp. & 1978). He is authorized to cooperate with federal agencies engaged in similar surveys or investigations and may accept and use the results of those agencies. N.M.Stat.Ann. § 72–4–13 (1983 Supp.). Thus, the State Engineer could make use of all or part of the hydrographic survey prepared by the United States if he saw fit. Even if the State Engineer did not accept the United States survey, it still could be offered into evidence at the state court trial involving the general adjudication. N.M.Stat.Ann. § 72–4–16 (1978).

3. The Involvement of State Water Law

The involvement of state water law is another factor which was considered in determining whether a federal court should decline to exercise jurisdiction when there is a concurrent state proceeding. *Colorado River*, 424 U.S. at 820, 96 S.Ct. at 1247. In this case, there are an estimated 1600 water claimants, as well as the United States. Many of the rights, if not most, will depend upon state law. In this instance, the significant involvement of state water law is another factor which supports dismissal of the federal trespass action.

4. Convenience of the Forum

Another factor considered by the court in *Colorado River* was the convenience of the forum to the parties. 424 U.S. at 820, 96 S.Ct. at 1247. Regular and continuing sessions of this court are held in Albuquerque, New Mexico. D.N.M. Local R. 2(a) (October 25, 1983, as amended). The state district court in Cibola County is in Grants, New Mexico. Grants is some 78 miles from Albuquerque. N.M. State Hwy. Dep't and Commerce and Ind. Dep't, Travel Map of New Mexico—Table of Distances.

Grants is more centrally located given the course of the Rio San Jose and would be more convenient to claimants in the Grants and Gallup area.

### 5. Participation by the United States in State Court Adjudications

Another factor which the court in *Colorado River* addressed was the participation of the United States in state proceedings. 424 U.S. at 820, 96 S.Ct. at 1247. The United States has participated in state court general adjudications in New Mexico. *See e.g. State ex rel. Reynolds v. Lewis,* No. 20294 and 22600 (N.M. [Chaves County] Dist.Ct. filed March 13, 1975) and *State ex rel. Reynolds v. United States,* No. 75–184 (N.M. [San Jose County] Dist.Ct. filed March 13, 1975). The United States also has participated in general adjudications brought by the State Engineer in federal district court. *See e.g. State of New Mexico ex rel. Reynolds v. Aamodt,* No. 6639(M) (D.N.M. filed April 20, 1966). In any event, the United States can participate in a state court adjudication of the Rio San Jose.

### 6. Adequacy of State Court Proceedings

Finally, the adequacy of the state court proceedings must be addressed. The United States asserts that New Mexico has no comprehensive system for the adjudication of water rights and that New Mexico prefers a federal forum for general adjudications. The idea that New Mexico lacks a comprehensive system for the adjudication of water rights is not grounded in fact and needs no further comment. *See* N.M. Const. Art. XVI, N.M.Stat.Ann. ch. 72, art. 4, 5, 9 & 12 (1978 & 1983 Supp.) (Establishes procedures for the administrative and judicial determination of all water rights to the use of public waters, both underground and surface); *Colorado River,* 424 U.S. 800 at 804 & 804 n. 2, 96 S.Ct. 1236 at 1239 & 1240 n. 2, 47 L.Ed.2d 483 (1979) (N.M.Stat.

Ann. § 72–1–1 to § 72–5–39 and § 72–7–1 to § 72–7–3 (1978 & 1983 Supp.) cited as an example by the Supreme Court of an "elaborate procedure" for allocation of water and adjudication of conflicting water claims.).

The United States contends that New Mexico actually favors general adjudications in federal court. Without presuming to speak for the State of New Mexico, this court can take note of the numerous reported state cases involving general adjudications. Merely because the state has filed six general adjudications in federal court, *State of New Mexico ex rel. Reynolds v. Aamodt,* No. 6639(M) (D.N.M. filed April 20, 1966); *State of New Mexico ex rel. Reynolds v. Abbott* No. 7488 & 8650 (consolidated) (C) (D.N.M. filed March 28, 1968); *State of New Mexico ex rel. Reynolds v. Abeyta,* No. 7896 & No. 7939 (consolidated) (C) (D.N.M. filed February 4, 1969); *State of New Mexico ex rel. Reynolds v. Aragon,* No. 7941(C) (D.N.M. filed March 4, 1969); *State of New Mexico ex rel. Reynolds v. Arellano,* No. 76–036 (D.N.M. filed January 22, 1976 and closed June 30, 1981), does not establish that the State Engineer has a policy of pursuing general adjudications in federal court. Moreover, in circumstances such as these[3] state court proceedings should be preferred in order to avoid "the possibility of duplicative litigation, tension and controversy between the federal and state forums, hurried and pressured decisionmaking, and confusion over the disposition of property rights." *San Carlos Apache,* 103 S.Ct. at 3215.

### C. Dismissal or Stay of the Federal Action

This court will defer to the state court general adjudication of the Rio San Jose. It then becomes necessary to determine whether the federal action should be stayed or dismissed without prejudice. *San Car-*

---

**3.** If the court would have had removal jurisdiction over *Kerr-McGee* and *City of Grants,* it would have been necessary to apply the "exceptional circumstances" test in deciding whether *Bluewater-Toltec* should proceed as a federal trespass action and a general adjudication. I conclude that, based on the principles of *Colora-*

*do River* and *San Carlos Apache* and the above analysis, the proper disposition still would have been remanding the state court action and deferring the federal trespass action. The federal trespass action could then occur subsequent to the state court general adjudication.

*los Apache,* 103 S.Ct. at 3215 n. 21, *but see* C. Wright, A. Miller & E. Cooper, 17 Federal Practice & Procedure § 4247 at 518 (1978 & 1982 Supp.) (Practical effect of stay or dismissal may be quite the same.). After considering the factual similarities between this case and *Colorado River,* the court concludes that a dismissal without prejudice of the federal action is most appropriate. *Contra, Northern Cheyenne Tribe v. Adsit,* 721 F.2d 1187 (9th Cir.1983). The general adjudication of the Rio San Jose is a prerequisite to any relief requested by the United States in the federal action. That general adjudication will have a profound effect on the nature and extent of any claims made by the United States. A general adjudication involving some 1600 claimants will take years to complete. It serves no good purpose for this unfocused federal trespass action to linger while the general adjudication proceeds. Once the general adjudication is completed, or if there should be "a significant change in circumstances," *San Carlos Apache,* 103 S.Ct. at 3216 n. 21, the United States may resort to federal court.

For all of the foregoing reasons, the Motion to Dismiss of certain *Bluewater-Toltec* defendants is granted as to all *Bluewater-Toltec* defendants.

### ORDER

For reasons set forth in the court's Memorandum Opinion filed February 27, 1984,

IT IS ORDERED that in *Kerr-McGee Corporation v. United States,* CIV 83–1462 BB, the United States' Motion to Dismiss (pleading no. 8) is denied.

IT IS FURTHER ORDERED that in *City of Grants v. United States,* CIV 83–1540 BB, the United States' Motion to Dismiss (pleading no. 15) is denied.

IT IS FURTHER ORDERED that in *Kerr-McGee Corporation v. United States,* CIV 83–1462 BB, consolidated with *City of Grants v. United States,* CIV 83–1540 BB, for the purpose of consideration and disposition of the plaintiffs' motions for remand, the plaintiffs' motions for remand (pleading nos. 3 & 17, respectively) are granted in part in that these two cases were removed improvidently and without jurisdiction and now are remanded to the New Mexico State District Court for the Thirteenth Judicial District, Cibola County. In all other requests, the motions for remand are denied.

IT IS FURTHER ORDERED that in *United States v. Bluewater-Toltec,* CIV 82–1466 BB, certain defendants' Motion to Dismiss (pleading no. 1378) is granted and this case is dismissed against all defendants, without prejudice.