887 P.2d 1254

**STATE of New Mexico, ex rel. Eluid L. MARTINEZ, State Engineer, Plaintiff–Appellant,**

v.

**PARKER TOWNSEND RANCH COMPANY and United Continental of New Mexico, Defendants–Appellees.**

No. 11679.

Court of Appeals of New Mexico.

Dec. 18, 1992.

Certiorari Granted Feb. 23, 1993.

Laura C. Harper, Sp. Asst. Atty. Gen., New Mexico State Engineer's Office, Santa Fe, for plaintiff-appellant.

Fred ·H. Hennighausen, Hennighausen & Olsen, Roswell, for defendants-appellees.

## OPINION

MINZNER, Judge.

On the state's motion for rehearing, the prior opinion filed September 14, 1992 is withdrawn and the following is substituted therefor.

The state appeals from the district court's order granting defendant water rights holders' motion for summary judgment and denying the state's similar motion. On appeal, the state contends that the district court erred in granting defendants' motion for summary judgment, because the basis for the court's decision was a subfile order in defendants' favor, which should have been viewed as modifiable. We affirm on the ground that defendants made a prima facie showing that they were entitled to summary judgment and that the state failed to show that there was a genuine issue of material fact or that it was entitled to judgment as a matter of law.

## I. BACKGROUND.

This appeal arises out of a general adjudication of water rights in Chaves County initiated in 1956 by the state of New Mexico and the Pecos Valley Artesian Conservancy District with respect to Roswell Artesian Basin groundwater rights, which was subsequently consolidated with a second suit filed in 1958 by the same parties to adjudicate the water rights of the Hagerman Irrigation Company and those of each individual using water from the Hagerman Canal. The initial adjudication was enlarged in 1974 to include the surface and groundwater uses in the tributary Rio Hondo system. At the request of the Carlsbad Irrigation District in 1976, it was expanded again to include all rights in the Pecos River stream system.

A partial decree entered at an early stage of this proceeding has been before the appellate courts on a number of occasions. *Compare State ex rel. Reynolds v. Allman,* 78 N.M. 1, 427 P.2d 886 (1967) (appeal from decision denying motions to reopen partial final decree entered in 1966, after initial suit was consolidated with second; decision reversed in order to give water rights holders who were parties in initial suit opportunity to establish priority on the same basis as those who were parties in the second suit) *and State ex rel. State Eng'r v. Crider,* 78 N.M. 312, 431 P.2d 45 (1967) (appeal from 1966 partial final decree challenging prior interlocutory decree adjudicating rights of defendant cities inter se; cause remanded with instructions to modify decree in part) *with State ex rel. Reynolds v. Lewis,* 84 N.M. 768, 508 P.2d 577 (1973) (trial court decision in May 1970 modifying 1966 partial final decree to establish proper duty of water affirmed). An interim order that established the procedure followed in the present lawsuit has also been before the appellate courts. *See, e.g., State ex rel. Reynolds v. Pecos Valley Artesian Conservancy Dist.,* 99 N.M. 699, 663 P.2d 358 (1983) (trial court did not abuse its discretion in adopting state's procedure for expediting priority administration of junior rights as against senior rights by requiring junior priority users to show cause in individual proceedings why their uses should not be enjoined, subject to inter se contest, to satisfy the senior rights of the Carlsbad Irrigation District).

Defendants' predecessor in title was assigned a groundwater right with a priority date of 1949 prior to entry of the 1966 partial final decree that was the subject of *Allman, Crider,* and, at least indirectly, *Lewis.* As a result of the decision in *Allman,* the 1966 partial final decree was set aside and subsequently amended in 1970, first in May, *see Lewis,* and again in December. The Partial

Final Judgment and Decree of December 1970 provided, in relevant part:

> that this adjudication of priority among defendants shall not preclude or estop the owner of any water right, including the Hagerman Irrigation Company, from establishing in any other proceeding that such water right has an earlier priority on the basis of the relation back of such water right to an antecedent water right.

In 1976, defendants' predecessor in title accepted the state's offer of judgment and an order was entered, based on that offer, recognizing a water right with a priority date of 1884. Defendants' land is located in the Hondo Basin. The order was entered in a subfile of the Rio Hondo subsection (HO.34.B) of this proceeding for 59.6 acres, which now belong to defendant United Continental (5.0 acres) and defendant Parker Townsend Ranch Company (54.6 acres). The record indicates that the Rio Hondo and its tributaries are a source of groundwater recharge to the Roswell Artesian Basin and that the state contends appropriations from the Rio Hondo system could affect rights in the Roswell Artesian Basin. No partial final decree has been entered in the Rio Hondo subsection.

Shortly after defendants' predecessor in title accepted the state's offer of judgment in Subfile No. HO.34.B, the Carlsbad Irrigation District made a "priority call," and thereafter the state decided to expedite the determination of junior rights by the procedure approved by the supreme court in *State ex rel. Reynolds v. Pecos Valley Artesian Conservancy District.* Pursuant to that procedure, in 1982 the district court entered an order affecting all water rights holders in the Pecos River stream system with priority dates after 1946. In that order, the court granted the state's amended motion for an interim decree on priorities affecting the Carlsbad Irrigation District. As the supreme court noted in *State ex rel. Reynolds v. Pecos Valley Artesian Conservancy District,* the order permitted "the court to enjoin water users with priorities junior to January 1, 1947, to show cause in individual proceedings why their uses should not be enjoined pursuant to Article XVI, Section 2 of the New Mexico Constitution [appropriation of water]." *Id.,* 99 N.M. at 700, 663 P.2d at 359.

In 1985, defendants' predecessors in title were ordered to show cause why their priority should not be adjudicated in accordance with the 1949 priority date adjudicated in the 1962 subfile orders. They filed answers claiming a priority date of 1884. Subsequently, defendants were substituted for their predecessors.

United Continental moved for summary judgment. The state made a cross-motion for summary judgment against United Continental and moved for summary judgment against Parker Townsend and the City of Roswell. *See State ex rel. Martinez v. City of Roswell,* 114 N.M. 581, 844 P.2d 831 (Ct. App.1992). Parker Townsend responded and also filed a cross-motion for summary judgment.

United Continental's motion noted the terms of the 1976 order and described its application to the state engineer in 1984 to change the point of diversion, location of well, and place and purpose of use, which the state engineer granted. Copies of the order, the application, and the approval were attached. The 1976 order attached to United Continental's motion recited that defendants' predecessors in title had a right to withdraw "surface and/or underground waters from the Rio Hondo Stream System" for irrigation purposes with a priority date of 1884. However, the motion itself refers to the 1976 order as having adjudicated a surface water right to its predecessors.

Parker Townsend's cross-motion for summary judgment, in which United Continental joined, was also based in part on the 1976 order as an adjudication of their predecessors' right to a priority date of 1884. Parker Townsend's brief in support of its cross-motion and response to the state's motion contained a statement that the subfile order applied to both surface and underground water. In its response to the state's cross-motion for summary judgment, United Continental adopted by reference Parker Townsend's response.

■ Parker Townsend's brief relied on the doctrine of relation back, *see State ex rel.*

*Reynolds v. Mendenhall,* 68 N.M. 467, 362 P.2d 998 (1961), which holds that the priority of a water right relates back from the date of first beneficial use to the date work commenced to bring about the beneficial use. The brief also relied on the doctrine of *Templeton v. Pecos Valley Artesian Conservancy District,* 65 N.M. 59, 332 P.2d 465 (1958) (the *Templeton* doctrine). The *Templeton* doctrine allows appropriators of surface waters to supplement their appropriations by drilling wells into underground waters which are a source of surface waters in which they have rights. *Id.; see also Brantley v. Carlsbad Irrigation Dist.,* 92 N.M. 280, 587 P.2d 427 (1978).

The state's response to cross-motion for summary judgment and reply to response to cross-motion for summary judgment, which was accompanied by expert verifications, argued that defendants relied "on an incorrect interpretation of the *Templeton* doctrine as the basis for their 'relation back' claim." The state contended that the hydrogeology of the area precluded application of the *Templeton* doctrine for relating the priority date of the supplemental wells back to the priority date of the surface right.

Parker Townsend's reply to the state's response relied on the doctrine of relation back as well as the *Templeton* doctrine, but also asserted a priority date of 1884 based on the 1976 order with respect to both surface and groundwater rights. Its supporting brief specifically argued that the meaning of the order was "clear and unambiguous."

The district court granted summary judgment to United Continental and Parker Townsend and denied the state's motions regarding them. The district court found that the 1976 subfile order "dispose[d] of the motions as a matter of law."

## II. DISCUSSION.

On appeal, the state contends that the district court erred in granting summary judgment because the 1976 order was interlocutory and therefore modifiable. *See State ex rel. State Eng'r v. Crider.* The state's argument is premised on its characterization of the district court's decision. In the state's

view, the district court held that subfile orders are not modifiable. We disagree with that characterization.

■ On appeal, it is our obligation as an appellate court to entertain all reasonable presumptions in favor of the correctness of the district court's findings, conclusions, and judgment. *Esquibel v. Hallmark,* 92 N.M. 254, 586 P.2d 1083 (1978). As we interpret the order, the district court ruled that defendants had made a showing that they were entitled to judgment as a matter of law, to which the state made an insufficient response. *See* SCRA 1986, 1–056(C) (Repl. 1992).

■ We note that the substantive issue before the district court was whether defendants had shown cause why the priority dates of their groundwater rights should not be finally adjudicated as of 1949, the date set forth in the 1962 subfile orders. On that issue, defendants made a prima facie showing that they were entitled to summary judgment by producing the 1976 order. Thereafter, it was incumbent on the state to show that there was a genuine issue of material fact or law precluding judgment in defendants' favor. R. 1–056(E); *see also Koenig v. Perez,* 104 N.M. 664, 726 P.2d 341 (1986). On reviewing the record of the hearing on the motions for summary judgment, we are not persuaded that the state made a sufficient showing to meet defendants' prima facie case.

At the hearing on the motions for summary judgment, the record discloses that the state focused on its interpretation of the *Templeton* doctrine. It argued that even if the 1976 subfile order established a priority date of 1884 for defendants' water rights, that order did not preclude the state from subsequently challenging the efficacy of such order, because subfile orders were interlocutory in nature and subject to modification. The state concedes on appeal that it did not argue "the substance of the order," but rather relied on the principle that "interlocutory orders are modifiable under the inherent power of the court." The principle that interlocutory orders are modifiable does not in itself resolve the issue presented by this appeal. We believe the issue presented by

this appeal is whether the state made a case for modification. We rely on the decision of our supreme court in *State ex rel. Reynolds v. Sharp,* 66 N.M. 192, 196–97, 344 P.2d 943, 945 (1959), which held that "insofar as [a subfile order] covers the matters included therein, namely, the amount, purpose, periods, place of use and specific tract of land to which it was appurtenant, it was final...."

■ We interpret the supreme court's ruling in *Sharp* as precluding the state from challenging the provisions of a subfile order it agreed to and requested the court to enter unless the state moves to amend such order under SCRA 1986, 1–060(B) (Repl.1992). We believe that interpretation is consistent with the supreme court's most recent opinion discussing the concept of a final judgment. *See Kelly Inn No. 102, Inc. v. Kapnison,* 113 N.M. 231, 824 P.2d 1033 (1992).

■ In *Kelly Inn,* the supreme court proposed a guideline for determining when an order is final: "Where a judgment declares the rights and liabilities of the parties to the underlying controversy, a question remaining to be decided thereafter will not prevent the judgment from being final if resolution of that question will not alter the judgment or moot or revise decisions embodied therein." *Id.* at 238, 824 P.2d at 1040. In the procedural context in which the 1976 order was entered, it declared the rights and liabilities of defendants' predecessors in title in relation to the state. We hold the district court was entitled to conclude that the declaration it contained was intended to address surface and groundwater rights, and thus that defendants had made a prima facie showing that they were entitled to summary judgment as a matter of law.

■ Under the procedure approved in *State ex rel. Reynolds v. Pecos Valley Artesian Conservancy District,* defendants' rights to a priority date of 1884 remain subject to inter se contest between junior and senior water rights holders. As we understand the procedure,

The court will first determine which junior rights must, without question, be terminated to satisfy the senior rights of the Carlsbad Irrigation District, the United States,

or the individual water users served by the District. Then the court will adjudicate all of the stream system priorities in reverse order, simultaneously ordering each junior user to show cause why his rights should not be terminated to satisfy such senior rights. In effect, the *inter se* portion of the suit will proceed simultaneously with the individual determinations, giving each junior user the opportunity to contest the priority or any other aspect of the senior water rights, to assert his [or her] own priority and to raise any defenses which would preclude the termination of his [or her] right to satisfy the senior rights.

*Id.,* 99 N.M. at 701, 663 P.2d at 360.

Under this procedure, there are multiple claims and multiple parties. Under SCRA 1986, 1–054(C)(1) (Repl.1992), the 1976 order resolved "one or more but fewer than all of the claims" presented and was not final in the absence of an "express determination that there is no just reason for delay." When defendants' predecessor in title accepted the state's offer of judgment and the 1976 subfile order was entered on the basis of that acceptance, the order did not resolve all issues remaining regarding defendants' predecessor in title and other water rights holders nor all issues remaining regarding the state and other water rights holders. Thus, it was not final under Rule 1–054(C)(2), which declares final "judgment ... entered adjudicating all issues as to one or more, but fewer than all parties."

Nevertheless, *Kelly Inn* offers an additional formulation of finality. *Kelly Inn* is consistent with *Sharp* in recognizing the possibility of finality in water rights adjudications prior to either a partial final decree or a final decree.

■ In this case, defendants produced a prior order apparently resolving all issues of relevance in the present proceeding between themselves and the state. We think that it was then incumbent on the state to make a showing sufficient under Rule 1–060(B) to support setting aside the prior order. This it has not done. Instead, the state has argued that the prior order should be modified because of "mistake." However, the state did

not show that there had been a mistake in 1976. Rather, the state argued to the district court at the summary judgment hearing that the *Templeton* doctrine should be applied to these facts to preclude relation back. The district court was entitled to construe the 1976 order as a prima facie showing that defendants had both surface and groundwater rights with a priority date of 1884. The state never responded to that showing. The closest the state came to responding to that showing was when it argued the 1976 order was modifiable. However, the state neither identified Rule 1–060(B) as a source of authority nor attempted to make a showing under that rule.

The state finally argued that the 1976 order was incorrect in its post-hearing motion to alter or amend the order granting summary judgment. Even in its post-hearing motion, the state only noted that the 1976 subfile order was incorrect; it did not give any reasons for its statement. Assuming but not deciding that the post-hearing motion was essentially a Rule 1–060(B) motion, the state did not state adequate grounds for reopening the 1976 order. *Cf. Parsons v. Keil*, 106 N.M. 91, 739 P.2d 505 (1987) (standard of review for determining whether trial court erred in granting or denying motion to vacate judgment is whether trial court's ruling constituted an abuse of discretion).

On rehearing the state has argued that the standard for modifying subfile orders should not be the same as the standard for modifying final judgments. In its brief in chief, the state argued that the trial court "has the inherent power to modify [its interlocutory orders] for good cause prior to entry of the final adjudication decree." Thus, we understand the state's position to be that the order was modifiable without regard to the limitations of Rule 1–060(B). We disagree. In view of *Sharp*, we are not persuaded that there is a basis for the distinction the state asks us to make. Further, under the state's argument, it is difficult to determine what a subfile order means. There must be some aspect of finality to a subfile order or the inter se portion of the adjudication referred to in *State ex rel. Reynolds v. Pecos Valley Artesian Conservancy District* would never

occur. The state suggests that the sole aspect of finality that adheres to a subfile order is appealability. If it is final for those purposes, we think it makes sense to view it as final for purposes of Rule 1–060(B), particularly when, as in this case, the order resulted from the state's own offer of judgment.

Under Rule 1–060(B), the trial court has the power to modify judgments "whenever such action is appropriate to effectuate justice." *Koppenhaver v. Koppenhaver*, 101 N.M. 105, 108–09, 678 P.2d 1180, 1183–84 (Ct.App.1984). "Rule 60(b) seeks to carefully balance the competing principles of finality on the one hand, while permitting relief from unjust judgments on the other." *Id.* at 108, 678 P.2d at 1183. The rule seems to permit the kind of balancing of finality and due process interests for which the state has argued in this appeal, and existing case law under the rule will provide guidance to litigants in preparing and arguing motions. We are not persuaded, therefore, that we need to adopt the state's position in order to provide necessary flexibility.

The state also argues on rehearing that *Sharp* omitted priority from the list of matters that were final and expressly provided that priority remained to be fixed in the final decree. Defendants have responded on rehearing that under *Sharp* the subfile order was final regarding all matters included therein, and although priority remains to be fixed in the final decree between the parties, the matter of priority between the state and defendants is final. We agree with that reading of *Sharp*; "insofar as [a subfile order] covers the matters included therein … it was final…." *Id.*, 66 N.M. at 196–97, 344 P.2d at 945.

The state has suggested that the 1976 subfile order was not the focus of the parties' arguments in the early stages of the proceeding, and thus it did not have a sufficient chance to address the argument the district court found dispositive. We are not persuaded by this argument.

Both defendants relied on the order in pleadings prior to Parker Townsend's reply, and in adopting Parker Townsend's response to the state's motion United Continental corrected any ambiguity in its own motion. In

addition, the district court drew the state's attention to the order at the summary judgment hearing. The state did not contend at the hearing that it lacked an adequate opportunity to respond to the argument, but rather directed its argument to the applicability of the *Templeton* doctrine. We think the state has had an adequate opportunity to contest defendants' entitlement to a priority date of 1884.

On rehearing, the state contends that "[c]onsistency cannot be achieved as a practical matter through proceedings on [inter se] objections by one defendant against another." The state asks us to direct the district court to consider the evidence that defendants were not entitled to the benefit of the *Templeton* doctrine. *State ex rel. Martinez v. City of Roswell*, 114 N.M. at 582–89, 844 P.2d at 832–39 (discussing and applying the *Templeton* doctrine to a codefendant whose rights stem from a common grantor). The state argues that unless we reverse and remand with such directions, we will permit inconsistent subfile orders to stand. *See id.*

In *State ex rel. Reynolds v. Pecos Valley Artesian Conservancy District*, the supreme court addressed and approved the procedure followed in this case. Under that procedure, each junior user has a subsequent opportunity to contest the priority of senior water rights. The supreme court expressly said that the procedure satisfied due process. We think that the relative priorities of defendants and the City of Roswell raise issues for the inter se phase of the general adjudication of water rights and that such issues are not now before us.

Finally, the state contends in its reply brief that defendants' legal position is internally inconsistent. It suggests that if the 1976 order should be considered final between the parties, then the 1962 subfile order establishing a 1949 priority date for the well at issue should also be considered final and unmodifiable. The history of this litigation indicates that a number of orders were reopened as a consequence of the supreme court's decision in *Allman* in order to permit parties to argue for relation back under *Templeton*, as well as *Mendenhall*. In light of the 1976 order entered in response to the

state's offer of judgment that set a priority date of 1884, we infer that defendants showed some entitlement, which the state acknowledged with its offer of judgment. The district court judge's remarks indicate that he believed the 1976 order was entered with knowledge of *Templeton*. Perhaps the state's understanding of *Templeton* has changed, or perhaps some other argument for relation back was made and accepted in 1976. We need not decide. We do disagree with the state's suggestion that defendants' position is legally inconsistent. *Cf. City of Las Vegas v. Oman*, 110 N.M. 425, 435–36, 796 P.2d 1121, 1131–32 (Ct.App.1990) (where inconsistent final judgments were rendered in two actions, it was later, not earlier, judgment that was accorded conclusive effect in third action under rules of res judicata and collateral estoppel).

The dissent has characterized the 1976 order as recognizing "a preclusive *Templeton* defense" as a matter of law, 118 N.M. at 794, 887 P.2d at 1261, and describes the district court as having ruled that "the 1976 subfile order sufficiently demonstrated that the groundwater at issue is *Templeton* water." 118 N.M. at 795, 887 P.2d at 1262. That is not the state's position on appeal. Rather, the state contends that the district court erred in holding the 1976 order was not modifiable. As indicated above, the state concedes that it did not argue "the substance of the order" before the district court, and on appeal relies on the principle that "interlocutory orders are modifiable under the inherent power of the court." We answer the argument made on appeal because it was the argument made to the district court. *See* SCRA 1986, 12–216 (Repl.1992).

The dissent indicates that we have affirmed the district court's ruling that the 1976 order constituted "a preclusive *Templeton* defense as a matter of law," 118 N.M. at 794, 887 P.2d at 1261, and that we apparently agree that "the 1976 subfile order sufficiently demonstrated that the groundwater at issue is *Templeton* water." 118 N.M. at 795, 887 P.2d at 1262. We do not wish to leave that impression. We are not persuaded that the district court necessarily ruled on the *Templeton* defense as it applied to those defen-

dants, nor do we think that the court was asked to determine the basis of the 1976 order rather than its procedural significance in the present proceedings. For these reasons, we do not need to address defendants' entitlement to rely on the *Templeton* doctrine.

### III. CONCLUSION.

For the reasons discussed herein, we conclude that the state failed to adequately refute defendants' showing of their rights under the 1976 order so as to rebut their motion for summary judgment. The district court's order granting defendants' motion for summary judgment is affirmed. No costs are awarded.

IT IS SO ORDERED.

DONNELLY, J., concurs.

ALARID, C.J., dissenting.

ALARID, Chief Judge, dissenting.

I respectfully dissent.

This is a show cause proceeding to give "each defendant the opportunity to establish his priority and to contest the priority of the Carlsbad Irrigation District." *State ex rel. Reynolds v. Pecos Valley Artesian Conservancy Dist.*, 99 N.M. 699, 701, 663 P.2d 358, 360 (1983). Of this procedure our supreme court has said:

> In effect, the *inter se* portion of the suit will proceed simultaneously with the individual determinations, giving each junior user the opportunity to contest the priority or any other aspect of the senior water rights, to *assert his own priority and to raise any defenses* which would preclude the termination of his right to satisfy the senior rights. (Emphasis added.)

*Id.* It is well established that a groundwater right priority date may "relate back" as a matter of law to an antecedent surface right priority date under the *Templeton* doctrine. *See Templeton v. Pecos Valley Artesian Conservancy Dist.*, 65 N.M. 59, 332 P.2d 465 (1958); *State ex el. Reynolds v. Allman*, 78 N.M. 1, 427 P.2d 886 (1967); *State ex rel. Martinez v. City of Roswell*, 114 N.M. 581, 844 P.2d 831 (Ct.App.1992). Parker Town-

send has defended by asserting what at this stage of the proceedings is essentially a *Templeton* defense. A properly argued *Templeton* defense would permit the priority of their "supplemental" well drilled in 1949 to relate back to the priority of their antecedent surface right fixed at 1884 and to which right the well is "supplemental."

This show cause proceeding was brought pursuant to a 1962 subfile order that fixed defendants' "supplemental" well priority at 1949. To overcome the 1962 subfile order and to establish their *Templeton* defense, defendants produced a 1976 subfile order fixing their *surface* priority at 1884 with a right to take their annual duty from either the surface source or the "supplemental" well described in both the 1962 and 1976 subfile orders. The trial court ruled that the 1976 order constituted a preclusive *Templeton* defense as a matter of law. The majority affirms the ruling but indicates that the 1976 order was not preclusive as a matter of law but rather was insufficiently rebutted by the state. This leaves open the question of the effect of the 1976 subfile order as a matter of law. The majority also intimates that in order to sufficiently rebut the 1976 subfile order, the state may be required to first seek to modify it by a motion brought under SCRA 1986, 1–060(B) (Repl.1992).

This case has two masks. One mask has the application of the *Templeton* doctrine as a question of hydrogeological fact. In other words, it places before the trial court the question of whether the factual predicates were demonstrated for the correct application of the *Templeton* doctrine. The other mask, worn by the trial court and the majority in this case, shows the question as the proper construal of a court order; in other words, a question of law. I dissent because the trial court and the majority have put the wrong mask on this case.

Defendants presented a *Templeton* defense of which the 1976 order was a component. The majority has subsumed the factual question of the correct application of *Templeton* into the question of whether the 1976 subfile order established a *Templeton* defense as a matter of law. The record discloses the state factually challenged the ap-

plication of the *Templeton* doctrine to defendants because the underlying geohydrology would not support its application. Affidavits of experts and diagrams detailing the factual dispute appear therein.

The 1976 subfile order may establish a prima facie case for summary judgment. However, even if it does establish a prima facie entitlement to summary judgment, I do not agree that the state failed to rebut the 1976 subfile order sufficient to demonstrate that a fact issue remained for trial. The state argued that relation back may only be demonstrated through a showing that the water in the "supplemental" well is water obtained pursuant to the doctrine established in *Templeton*. The record indicates that there are many "supplemental" groundwater wells in the Pecos stream system. Our appellate courts have never considered the relationship between the commonly-used "supplemental" language appearing in the 1976 subfile order and the predicate factual showing necessary to invoke the *Templeton* doctrine as a matter of law. The district court ruled that the 1976 subfile order sufficiently demonstrated that the groundwater at issue is *Templeton* water and the majority apparently agrees. Because I believe the defense advanced in this case must in the first instance establish the correct application of the *Templeton* doctrine as a matter of fact, I believe a fact issue remains as to whether the water in defendants' "supplemental" groundwater well is actually water obtained pursuant to the doctrine established by *Templeton* and subsequent cases. *See State ex rel. Martinez v. City of Roswell.* Accordingly, I would reverse the summary judgment award.